A.E. STALEY MANUFACTURING COMPANY, f/k/a Staley Continental, Inc., Plaintiff and Counterdefendant-Appellee, v. WILLIAM S. ROBERTSON, Defendant and Counterplaintiff-Appellant (The American Arbitration Association, Inc., Defendant).

First District (4th Division)   No. 1—89—0498

Opinion filed June 28, 1990.

John A. McDonald and Robert E. Arroyo, both of Keck, Mahin & Cate, of Chicago, for appellant.

Walter P. Loomis, Jr., and Mark A. Casciari, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

William S. Robertson, defendant and counterplaintiff (hereinafter defendant), brings this appeal from an order of the circuit court of Cook County denying his cross-motion for judgment on the pleadings and granting the motion for judgment on the pleadings brought by A.E. Staley Manufacturing Co., plaintiff and counterdefendant (hereinafter plaintiff). The American Arbitration Association, Inc., is not a party to this appeal. Defendant presents the following issues for review: (1) whether the trial court erred in finding that his claim against plaintiff, concerning the amount of his retirement benefits, is not arbitrable pursuant to plaintiff's management retention agreement; and (2) whether defendant is entitled to attorney fees pursuant to this same agreement.

We reverse.

On April 8, 1986, defendant, an executive with plaintiff, entered

into a contractual agreement drafted by plaintiff. The agreement known as the "Management Retention Agreement" (hereinafter MRA) provides, in pertinent part, as follows:

"2C. For purposes of calculating his retirement benefits under this Paragraph 2C, Executive will be credited immediately with the equivalent of thirty-six (36) months of service and thirty-six (36) months of age, which shall be added to his actual service and age. If there are fewer than thirty-six (36) whole or partial months remaining from the date of Executive's termination to his normal retirement date at his actual age 65, the service and age credits provided for in this Paragraph 2C will be reduced by multiplying them by a fraction; the numerator of which is the number of whole or partial months so remaining to his normal retirement date at his actual age 65 and the denominator of which is 36. *Executive (or his estate or beneficiary) shall be eligible to receive, at the later of age 55 or the Executive's attained age at termination, a retirement benefit equivalent to the retirement benefits payable under all retirement plans of Staley (or its successor), including any supplemental retirement plans, immediately prior to such Change in Control or termination, whichever is greater,* to Executive at age 55 or Executive's age (as computed under this Paragraph 2C including the added service credit), whichever is greater, and with Executive's years of service with Staley (and its successor) (as computed under this Paragraph 2C including the added service credit), and with the payment under Paragraph 2A above used in the average monthly earnings calculation, assuming that such payment[s] were made in substantially equal monthly installments over the period of imputed service. *Any portion of the benefits provided for in this paragraph that would not be payable from the retirement plan funds of Staley (or its successor) due to federal or state law, or for any other reason, shall be paid out of the general revenues of Staley (or its successor) at such time as payments are regularly made from the retirement plan funds of Staley (or its successor).* [Emphasis added.]
\* \* \*

6. If, with respect to any alleged failure by Staley (or its successor) to comply with any of the terms of this Agreement, Executive hires legal counsel with respect hereto, or institutes any negotiations or institutes or responds to legal action to assert or defend the validity of, enforce his rights under, or re-

cover damages for breach of the same, Staley (or its successor) shall pay, as they are incurred, his actual expenses for attorneys' fees and disbursements, together with such additional payment, if any, as may be necessary so that the net after-tax payments to Executive equal such fees and disbursements.

7. Any controversy or claim arising out of or relating to this Agreement, or any breach hereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

This agreement was entered for the purpose of assuring the continued services of certain executives in the event of a take-over. These executives were afforded retirement benefits in exchange for their continued services during a "difficult" period.

Subsequently, defendant entered into a "Supplemental Executive Retirement Plan" (hereinafter SERP) which provided the chief executive officer and other selected executives with additional retirement benefits. Defendant's participation in this plan became effective June 16, 1986. However, the SERP did not provide any specific recourse to its participants in the event of a dispute.

On June 30, 1988, plaintiff terminated defendant's employment shortly after its take-over. Pursuant to defendant's contractual termination benefits under the MRA, he received $511,885 on July 1, 1988. On August 1, 1988, he received $258,978 as retirement benefits under the SERP.

Defendant, however, claims that he only received partial payment of his retirement benefits. He contends that plaintiff improperly reduced his SERP benefits by $389,879.78. Defendant proceeded to demand full payment of his SERP benefits. Plaintiff refused to pay the claimed amount, and defendant sought to arbitrate the matter pursuant to paragraph 7 of the MRA. On or about September 30, 1988, one of defendant's attorneys had a telephone conversation with one of plaintiff's attorneys. During that conversation, defendant alleges, plaintiff's attorney informed his attorney that plaintiff would take the position that defendant's claim was not arbitrable unless defendant agreed to plaintiff's choice for an arbitrator.

On October 7, 1988, plaintiff filed a complaint for declaratory judgment and an application to stay arbitration. Defendant then filed a counterclaim to compel arbitration. On November 10, 1988, the court authorized the American Arbitration Association to appoint an arbitrator, but ordered that an arbitration hearing could not be scheduled until the court reached a decision on the underlying issue of arbitrability of the dispute.

Motions for judgment on the pleadings were filed by both plaintiff and defendant. On January 20, 1989, the court granted plaintiff's motion for judgment on the pleadings and denied defendant's cross-motion. The court found that the dispute was not arbitrable under the MRA. It is from this decision that defendant appeals.

■ Section 1 of the Uniform Arbitration Act (hereinafter Act) provides:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract ***." Ill. Rev. Stat. 1989, ch. 10, par. 101.

Section 2(a) of the Act (Ill. Rev. Stat. 1989, ch. 10, par. 102(a)) authorizes the circuit court to compel arbitration upon the showing of the agreement described in section 1 of the Act. (Ill. Rev. Stat. 1989, ch. 10, par. 101.) "While arbitration is a favored method of dispute resolution, courts have consistently cautioned that an agreement to submit to arbitration is a matter of contract. Before an issue can properly be referred to an arbitrator, therefore, the particular dispute must be of the type that the parties have agreed should be submitted to arbitration." *United Cable Television Corp. v. Northwest Illinois Cable Corp.* (1989), 128 Ill. 2d 301, 306.

The threshold issue to be determined here is whether the MRA authorizes the arbitration of this particular dispute. The parties agree, pursuant to paragraph 7 of the MRA, that controversies which arise out of or that relate to the MRA must be settled by arbitration. It is not claimed, by either party, that the language in the clause is ambiguous. The SERP, however, does not address the means to be utilized in resolving disputes. Plaintiff maintains that the controversy does not arise out of or relate to the MRA. On the other hand, defendant argues, pursuant to paragraph 2C of the MRA, that the SERP must be construed as a part of the MRA. Therefore, their dispute must be resolved by arbitration in accordance with the "generic" language in paragraph 7 of the MRA. We agree with defendant.

■ A "generic" arbitration clause is nonspecific in its designation of arbitrable disputes. (*Ozdeger v. Altay* (1978), 66 Ill. App. 3d 629, 632.) Arbitration clauses that provide that all claims "arising out of" or "relating to" an agreement have been properly categorized as "generic" arbitration clauses. (*J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 670.)

To determine the scope of these clauses the court must examine the wording of the clause and the terms of the contract in which the clause is included. (See *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224.) To be within the scope of a "generic" arbitration clause, the dispute must arise out of the "subject matter of the contract." *Ozdeger*, 66 Ill. App. 3d at 632.

In *Ozdeger*, we held that a clause in a construction contract which provided for arbitration of disputes "arising out of, or relating to" this written contract applied to a subsequent oral agreement between the parties since the subject matter was the same in both agreements.

The parties' written agreement, in *Ozdeger*, provided that the defendants were to act as architects and general contractors in the construction of plaintiffs' house. A "generic" arbitration clause was contained in the written agreement. The clause, however, was part of a form contract of the American Institute of Architects (hereinafter AIA). An addendum was attached to this form that outlined defendants' duties as general contractors. Subsequently, the parties entered into an oral agreement that defendants would also act as carpentry managers.

Plaintiffs became dissatisfied with defendants' performance and filed suit against defendants alleging breach of duties as architects, general contractors and carpentry managers. Defendants then filed a motion to compel arbitration. Plaintiffs, in objecting to defendants' motion to compel arbitration, reasoned that the clause was not applicable to the oral agreement. The trial court later found, after plaintiffs had filed an amended complaint, that plaintiffs had sufficiently alleged a separate and distinct oral agreement to which the arbitration clause was inapplicable.

The appellate court, in reversing the trial court's decision, found that the language of the arbitration clause was "generic" and applied to "all disputes arising out of the subject matter of the contract, that is, the construction of plaintiffs' home." *Ozdeger v. Altay* (1978), 66 Ill. App. 3d 629, 632.

■ Similarly, in the instant case, we find the subject matter of both of the agreements to be the same, that is, benefits to be afforded to defendant in the event of his retirement or termination. In *Ozdeger*, the issue was not that the clause applied only to defendants' services as architects, merely because it was contained in the AIA form, nor did we find that the clause only applied to defendants' services as general contractors or carpentry managers. We

found that the subject matter was the same, that being the construction of plaintiffs' house, in both the written and oral agreements at issue.

We are not persuaded by plaintiff's argument, in the instant case, that the MRA and the SERP are two unrelated and distinct documents. Plaintiff reasons that the MRA only guarantees the continuation of the SERP benefit and not the formula used to calculate the SERP. It argues that because this is a formula dispute, it is not covered by the MRA. Plaintiff's characterization of the controversy as a formula dispute is a distinction without a difference. As plaintiff admitted in oral argument, certain aspects of the SERP are contained within the MRA. In order to get the full scope of defendant's benefits, the documents must be read in conjunction. Defendant aptly points out that a contract must be read as a whole and all parts construed together. (*Preski v. Warchol Construction Co.* (1982), 111 Ill. App. 3d 641, 645.) We find that the SERP may properly be construed as part of the MRA. This dispute, therefore, is arbitrable pursuant to the "generic" language contained in paragraph 7 of the MRA.

■ Defendant also argues that he is entitled to attorney fees, pursuant to paragraph 6 of the MRA. There is no comparable provision contained in the SERP. The trial court denied the fees, finding that the dispute had not arisen under the MRA. We, however, previously found that the SERP may properly be construed as part of the MRA. We, therefore, find that the dispute arises out of or relates to the MRA. Accordingly, we find that defendant is entitled to attorney fees pursuant to paragraph 6 of the MRA.

The decision of the trial court is, therefore, reversed and the cause is remanded with directions to compel arbitration.

Reversed and remanded with directions.

LINN and JIGANTI, JJ., concur.