BRIEN J. NAGLE *et al.*, Plaintiffs-Appellees, v. NADELHOFFER, NAGLE, KUHN, MITCHELL, MOSS AND SALOGA, P.C., d/b/a Nadelhoffer, Campbell, Kuhn, Mitchell, Moss, and Saloga, P.C., *et al.*, Defendants-Appellants.

Second District   No. 2—92—1176

Opinion filed May 5, 1993.—Rehearing denied June 9, 1993.

Gary E. Campbell, of Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C., of Naperville, for appellants.

Stephen D. Helm and Scott M. Day, both of Helm & Day, of Naperville, for appellees.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendants, the law firm of Nadelhoffer, Campbell, Kuhn, Mitchell, Moss and Saloga (NCK) and several individual partners thereof, appeal under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)) the trial court's interlocutory denial of their motion to compel the arbitration of a dispute between them and plaintiffs, Brien Nagle, Patricia Higgins, and the law firm of Nagle & Higgins (N & H).

NCK was formerly known as Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga. It was organized on September 30, 1987, as a professional corporation. On September 14, 1988, Nagle began employment with NCK as an attorney, corporate secretary, and partner. He also became a stockholder in NCK. Nagle and NCK entered into an employment agreement whereby Nagle was entitled to certain compensation upon the termination of his employment with NCK. The employment agreement contained the following arbitration clause:

"18. *ARBITRATION.* Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of Naperville in accordance with the rules then in effect of the Chicago Chapter of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof."

On September 29, 1989, NCK entered into a stock redemption agreement with all of its shareholders, including Nagle, whereby NCK agreed to purchase the shares of any shareholder who terminated his employment with the firm. The stock redemption agreement contained no arbitration clause.

On April 17, 1989, Patricia Higgins became an associate attorney with NCK. She entered into no employment agreements with NCK.

On March 5, 1992, both Nagle and Higgins resigned their positions with NCK effective March 7, 1992, and formed N & H. Soon thereafter, Nagle requested payment from NCK of money he claimed the firm owed him under the stock redemption agreement and the compensation provisions of the employment agreement.

A letter of May 13, 1992, from defendant Gary Campbell to Nagle stated the following:

"In light of the circumstances under which you left the firm, the partners have asked me to determine whether any breach of fiduciary duties occurred and, if so, what are the consequences.

As an officer-shareholder ('partner') you had a fiduciary duty of good faith, loyalty, and fair dealing to the firm. We believe that fiduciary duty was breached in two respects. First, without our consent, you, while still a partner, entered into negotiations with the firms' [sic] employee, Pat Higgins, to form a rival firm, and did in fact form a rival firm.

Second, you have appropriated firm business for the benefit of the rival firm. Brien, it appears that our options at this point are either to negotiate a resolution with takes into account these breaches, or proceed with litigation. The choice is yours.

Should you wish to negotiate these issues, please provide us with an accounting of all income taken in by the firm of Nagle & Higgins resulting from work which was initiated while you and Pat were at our firm.

We must also resolve through negotiation or litigation the issue of compensation to our firm from the lost profits occasioned by the loss of Pat Higgins. Based on last year's figures, the firm had a reasonable expectation of making at least $100,000 from Pat's time during the current year.

We think a strong case can be made for the proposition that because of the aforementioned breaches of fiduciary duty, you are not entitled to any deferred compensation at all. Numerous cases have held that an agent who stands in breach of his fiduciary duty of loyalty is not entitled to compensation.

I think you will agree that it is at least unreasonable for you to negotiate with Pat behind our backs to form a rival firm, take firm clients to the rival firm, and then expect to be paid deferred compensation by our firm.

In spite of our deep disappointment with your actions, the partners have elected to proceed with negotiations, should you desire to, rather than simply invite a law suit [sic]. In that spirit, we have prepared calculations of the sums which would otherwise be due to you, under the employment agreement and the stock redemption agreement, but for your breaches of fiduciary duty.

If you wish to proceed with a negotiated disposition of these issues, we would expect you to reciprocate and prepare an ac-

counting for us of all monies received or billed by your new firm for work which was initiated at our firm. ***"

Nagle took the position that neither he nor N & H was liable to NCK for any income he derived from former clients of NCK, with the exception of one case. He agreed to account for the income he received for that one case. He also contended that NCK was not entitled to any damages stemming from Higgins' leaving NCK. He therefore refused to prepare the accounting that NCK requested.

Nagle, Higgins, and N & H filed a declaratory judgment action against NCK, seeking a declaration that (1) N & H may continue to represent former clients of NCK; (2) neither Nagle, Higgins, nor N & H has an obligation to account to NCK for fees earned from former clients of NCK; (3) NCK is obligated to account to Nagle for money owing under the compensation provision of the employment agreement and under the stock redemption agreement; (4) NCK's refusal to account is vexatious and willful; and (5) NCK should pay interest from the date it refused to account for money owing under the employment and stock redemption agreements. Defendants moved to compel arbitration on the ground that the dispute fell under the arbitration clause of the employment agreement.

In opposition to defendants' motion, plaintiffs argued that the dispute was outside the scope of the arbitration clause because the dispute involved N & H, which was not a party to the arbitration agreement, and issues that were beyond the scope of the employment and stock redemption agreements. The trial court agreed with plaintiffs and denied NCK's motion.

After the trial court entered its order denying defendants' motion to compel arbitration, defendants filed their answer to plaintiffs' complaint. They also filed a document waiving and releasing any claims that they might have had against Higgins, N & H, and any claims against Nagle for forming a business relationship with Higgins. They reserved their claims against Nagle for breach of loyalty in appropriating unfinished firm business for his own benefit.

We first note that although this appeal is not from a final order, we have jurisdiction under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)) because a motion to compel arbitration is analogous to a motion for injunctive relief. *Robert A. Besner & Co. v. Lit America, Inc.* (1991), 214 Ill. App. 3d 619, 622-23; *J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 667.

■ The Uniform Arbitration Act (the Act) (Ill. Rev. Stat. 1991, ch. 10, par. 101 *et seq.*) governs the interpretation and enforcement of arbitration agreements. "The Act embodies a legislative policy favor-

ing enforcement of agreements to arbitrate future disputes." (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 443.) At a hearing to compel arbitration, the only issue for the trial court is whether an agreement exists to arbitrate the dispute in question. *Nelson v. Roger J. Lange & Co.* (1992), 229 Ill. App. 3d 909, 911; *J & K Cement*, 119 Ill. App. 3d at 669.

Defendants are correct that the arbitration clause in this case, which provides that all claims "arising out of, or relating to" the agreement shall be settled in arbitration, is considered a "generic" arbitration clause. (*Johnson v. Baumgardt* (1991), 216 Ill. App. 3d 550, 558.) Parties who enter into agreements containing such "generic" arbitration clauses are obligated to arbitrate any dispute that arises under the agreement. *Johnson*, 216 Ill. App. 3d at 559; Ill. Rev. Stat. 1991, ch. 10, par. 101.

On the other hand, "[t]he parties to an agreement are bound to arbitrate only those issues which by clear language and their intentions expressed in the language show they have agreed to arbitrate." (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 387; see also *Johnson*, 216 Ill. App. 3d at 558.) By the same token, "persons not parties to an arbitration agreement cannot be compelled to participate in arbitration." *Mid-America Regional Bargaining Association v. Modern Builders Industrial Concrete Co.* (1981), 101 Ill. App. 3d 83, 86.

Plaintiffs argue that arbitration is not appropriate in this case because the core of the dispute does not concern NCK's obligation to Nagle under either the employment agreement or the stock redemption agreement. According to plaintiffs, the calculation of Nagle's entitlements under those agreements is straightforward and NCK does not dispute the calculations. Plaintiffs claim, however, that the real dispute concerns plaintiffs' liability to NCK for starting a rival firm and doing business with former clients of NCK. They contend that this dispute does not fall within the arbitration clause.

■ A dispute concerning whether Nagle breached a fiduciary duty arguably falls within the scope of the arbitration clause in the employment agreement. A generic arbitration clause in an employment contract is broad enough to encompass any dispute which concerns Nagle's employment with NCK or his termination thereof, including the issue of breach of fiduciary duty. *Atkins v. Rustic Woods Partners* (1988), 171 Ill. App. 3d 373, 378.

Further, the fact that the dispute involves multiple parties, some of which are not subject to binding arbitration, does not persuade us that the arbitration provision should be ignored. The fifth district case

that denied arbitration in a multiparty situation, *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 820, has been criticized and questioned by other districts, including our own. (See *M.D. Building Material Co. v. 910 Construction Venture* (1991), 219 Ill. App. 3d 509, 519; *Kurland Steel Co. v. Carle Foundation Hospital* (1989), 185 Ill. App. 3d 624, 627; *J & K Cement*, 119 Ill. App. 3d at 674-75.) In *J & K Cement*, this court found that, even in a multiparty lawsuit in which all parties are not subject to arbitrating their disputes, arbitration is the favored policy in Illinois despite the existence of claims by third parties. (*J & K Cement*, 119 Ill. App. 3d at 679.) The *J & K Cement* court further reasoned:

"Parties agree to broad arbitration clauses *** specifically to encompass disputes which are not foreseeable at the time of contracting and expect that such agreements will be specifically enforceable in a court action. To deny [the] motion to compel arbitration here would deny parties the right to their contractually chosen method of dispute resolution. We are not prepared to ignore the policy favoring arbitration simply because of the presence of multiple parties. Similarly, we believe the drafters of the Uniform Arbitration Act anticipated multiparty problems and intended that arbitration agreements nonetheless be enforced in such situations." *J & K Cement*, 119 Ill. App. 3d at 682.

Normally, we would stay that portion of the action adjudicating arbitrable issues that are severable from nonarbitrable issues pursuant to section 2(d) of the Uniform Arbitration Act (Ill. Rev. Stat. 1991, ch. 10, par. 102(d)) and allow the continued adjudication of nonarbitrable issues. (See *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 849; *J & K Cement*, 119 Ill. App. 3d at 682.) However, in an answer filed after NCK's notice of appeal was filed, NCK released Higgins and N & H from liability, focusing the issues for arbitration on the disputes between Nagle & NCK. Defendants argue that the waiver and release of claim that they executed in plaintiffs' favor renders moot any dispute that NCK had with Higgins and N & H. Plaintiffs argue that we cannot consider the waiver and release of claim because that document was not before the trial court.

Defendants are correct that we cannot review issues once circumstances have rendered the controversy underlying those issues moot, even when those circumstances occurred after the order appealed from. (*Harry W. Kuhn, Inc. v. County of Du Page* (1990), 203 Ill. App. 3d 677, 685.) We take judicial notice of the answer and waiver

filed by defendants releasing all claims "it may have to any set-offs [*sic*] to Nagel's right to payment under the Stock Redemption Agreement based upon Nagel's breaches of fiduciary duty." Defendants also waived and released any claims for setoff based on Nagle forming a rival partnership. Finally, defendants also waived and released all possible claims against Higgins and N & H.

In the waiver and release of claim, defendants contend that their only claim is that "Nagle *** breached his fiduciary duty of loyalty and good faith arising out of his Employment Agreement with, and ownership of, [NCK] by appropriating unfinished firm business of [NCK] for his own benefit by diverting said unfinished firm business through [N & H], a firm which Nagle formed prior to leaving [NCK] and which Nagle caused to be incorporated on or about March 13, 1992." Defendants also provided a full accounting to Nagle under the stock redemption agreement. In defendant's own words, "[t]he only dispute between Defendants and Nagle is Nagle's claimed right to compensation under the Employment Agreement, and Defendants['] contention that Nagle breached his fiduciary duty arising out of the Employment Agreement."

Pursuant to our authority under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we accept defendants' answer and waiver and release of claims, in effect, as a dismissal with prejudice. (See *Messenger v. Rutherford* (1970), 130 Ill. App. 2d 407, 414 (allegation in defendant's amended answer that he owed a debt sought in plaintiffs' complaint was a judicial admission and was conclusive against the pleader).) Thus, the only issues that are left to be resolved are (1) the amount Nagle is entitled to under the stock redemption agreement; (2) the amount Nagle is entitled to under the employment agreement; (3) whether Nagle is entitled to interest on monies owed under the employment and stock redemption agreements; and (4) whether Nagle breached his fiduciary duty to NCK by appropriating unfinished firm business.

■ We believe the last issue is limited to Nagle accounting for work performed by NCK for which Nagle, either individually or through N & H, received compensation. Nagle agreed to account for those situations in a correspondence of July 8, 1992, attached to the complaint and believes that there is only one file that qualifies as work performed by NCK which resulted in income for N & H. However, the number of files that qualify is to be determined by the arbitrator. N & H and Higgins do not have legal interests in this dispute simply because each may have monetarily benefitted from Nagle's alleged breach of fiduciary duty.

In their brief, plaintiffs argue that the declaratory judgment action exists to determine that N & H can exist as a "rival" firm; that NCK may not procure monetary compensation for lost profits for the loss of Higgins; and that N & H need not pay NCK for work N & H performed after a client fired NCK. We hold that NCK has waived any possible claim based upon these issues. Thus, the trial court need not decide these nonarbitrable issues in plaintiffs' declaratory judgment complaint.

We have already determined that an employee's alleged breach of fiduciary duty is arbitrable when an employment agreement contains a generic arbitration clause. (*Atkins*, 171 Ill. App. 3d at 378.) We also find that the arbitrator should decide whether the stock redemption agreement is incorporated into the employment agreement such that the arbitration clause applies to issues related to the stock redemption agreement.

When parties enter into an agreement which has a generic arbitration clause, that arbitration clause covers a dispute arising under a subsequent agreement between the same parties as long as the original agreement and the subsequent one concern the same subject matter. (*A.E. Staley Manufacturing Co. v. Robertson* (1990), 200 Ill. App. 3d 725, 730-31.) In *Staley*, an executive entered into an agreement with his employer providing for retirement benefits. This agreement contained a generic arbitration clause. (*Staley*, 200 Ill. App. 3d at 726-27.) Subsequently, the executive entered into an additional agreement with his employer providing for supplemental retirement benefits. The second agreement contained no arbitration clause. A dispute arose concerning the employer's obligation under the supplemental retirement benefits agreement. (*Staley*, 200 Ill. App. 3d at 728.) The reviewing court determined that the subject matter of both agreements was the same; both agreements concerned "benefits to be afforded to defendant in the event of his retirement or termination." (*Staley*, 200 Ill. App. 3d at 730.) The court further found that the agreements were not separate and distinct, but that they had to be read in conjunction with each other. (*Staley*, 200 Ill. App. 3d at 731.) The court held, therefore, that under the broad scope of the generic arbitration clause, a dispute arising under the second contract was arbitrable. *Staley*, 200 Ill. App. 3d at 731.

The court in *Staley* relied on its prior decision in *Ozdeger v. Altay* (1978), 66 Ill. App. 3d 629. In *Ozdeger*, plaintiffs entered into a contract with defendants whereby defendants were to act as architects and general contractors in connection with the construction of a house. The contract contained a generic arbitration clause. (*Ozdeger*,

66 Ill. App. 3d at 630.) Subsequently, the parties orally agreed that defendants would act as carpentry managers. This oral agreement contained no provision for arbitration. A dispute arose with regard to defendants' performance as architects, general contractors, and carpentry managers. (*Ozdeger*, 66 Ill. App. 3d at 630.) The court held that the entire dispute, including the dispute arising out of defendants' performance as carpentry managers, was arbitrable. (*Ozdeger*, 66 Ill. App. 3d at 631.) The court reasoned that the carpentry contract was part of the same general agreement to build plaintiff's house as the original contract and, therefore, the dispute over the carpentry management "arose out of or related to" the agreement which contained the arbitration clause. *Ozdeger*, 66 Ill. App. 3d at 632-33.

In this case, the employment agreement described Nagle's duties at the firm. Under the employment agreement, Nagle was to act as attorney and as assistant secretary for the firm. The employment agreement also provided that if Nagle's employment with the firm terminated, Nagle would receive specified deferred compensation for accounts receivable on which he had worked. Nagle subsequently entered into the stock redemption agreement as a shareholder of the firm. Section 2 of the agreement provided that if a shareholder terminated his employment with the firm, the firm would buy his shares.

Defendants argue that because the stock redemption agreement refers in section 2 to the shareholder's employment with the firm, Nagle's rights under the stock redemption agreement must be read in conjunction with the employment agreement. According to defendants, therefore, because both agreements concern Nagle's employment with the firm, the arbitration clause in the employment agreement covers a dispute under the stock redemption agreement.

The two agreements in this case, however, are not as closely connected as were the agreements in *Staley* and *Ozdeger*. In *Staley*, both agreements concerned the executive's retirement benefits, and the second agreement, by its terms, was supplemental to the first. (*Staley*, 200 Ill. App. 3d at 728.) In *Ozdeger*, the second agreement was part of a general agreement concerning the construction of a house. (*Ozdeger*, 66 Ill. App. 3d at 632.) In this case, the employment agreement concerns Nagle's rights and obligations as an employee of the firm, and the stock redemption agreement concerns his rights and obligations as a shareholder in the firm.

The extent to which the stock redemption agreement depends on, or is interrelated with, the employment agreement is unclear from the record before us. Our supreme court has recently held that "when the language of an arbitration clause is broad and it is unclear whether

the subject matter of the dispute falls within the scope of [the] arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." (*Donaldson*, 124 Ill. 2d at 447-48.) The arbitrator, not the court, is the entity designated to interpret ambiguities in the contract. (*Donaldson*, 124 Ill. 2d at 448.) Therefore, we conclude that the question of whether the arbitration clause in the employment agreement covers disputes under the stock redemption agreement is itself arbitrable.

For the foregoing reasons, we reverse the order of the circuit court denying defendant's motion to compel arbitration and remand for further proceedings. The arbitrator shall determine (1) the amount Nagle is entitled to under the employment agreement, including whether Nagle is entitled to interest; (2) whether Nagle breached his fiduciary duty in appropriating unfinished firm business of NCK through N & H, which is limited to a determination of the amount owed to NCK for unpaid work it performed for a client before the client fired NCK and hired N & H; and (3) whether the issue of compensation under the stock redemption agreement is arbitrable, and if so, what amount is owed to Nagle under the stock redemption agreement, including whether Nagle is entitled to interest. We further hold that all other issues in plaintiffs' declaratory judgment complaint are moot because defendants forever have waived and released any possible claims pertaining to those issues. As such, because the only issues remaining in plaintiffs' declaratory judgment complaint are arbitrable, pursuant to section 2(d) of the Uniform Arbitration Act, the declaratory judgment action is stayed pending the decision of the arbitrator. See *Contract Development Corp. v. Beck* (1991), 210 Ill. App. 3d 677, 679.

Reversed and remanded.

GEIGER and DOYLE, JJ., concur.