CLINTON KENNEDY *et al.*, Indiv. and on Behalf of a Class of Similarly Situated Persons, Plaintiffs-Appellees, v. COMMERCIAL CARRIERS, INC., Defendant-Appellant.

First District (5th Division)   No. 1—92—3796

Opinion filed February 18, 1994.—Rehearing denied March 23, 1994.

McDermott, Will & Emery, of Chicago (John T. Schriver, Steven F. Pflaum, and Diane Parizek Moore, of counsel), for appellant.

Charles Pressman, Joel M. Hellman, and Potter & Schaffner, all of Chicago (Robin B. Potter, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Defendant, Commercial Carriers, Inc. (CCI), filed this interlocutory appeal pursuant to Supreme Court Rule 307 (134 Ill. 2d R. 307) to challenge the circuit court's denial of its motion to compel arbitration of plaintiffs' breach of contract actions.

We affirm.

## BACKGROUND

CCI is engaged in the business of transporting automobiles as a contract and common carrier. Plaintiffs Clinton Kennedy, Dale Long, Kenneth Chandler and Harold Sutphin are transport equipment owners who brought the underlying breach of contract action against CCI on behalf of all persons who leased transport equipment to CCI through 1988. During the time periods at issue, plaintiffs were members of the Central and Southern Conference of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union). CCI and the Union were parties to a collective bargaining agreement which covered the plaintiffs.

Each of the plaintiffs had a separate written lease agreement with CCI, and each lease required CCI to pay as rent a percentage of CCI's gross revenues minus certain allowable deductions. Plaintiffs alleged that CCI breached the leases by failing to pay them the proper rents. According to plaintiffs, CCI improperly calculated the gross rents by deducting "ancillary charges" from its gross billings prior to applying the 65% rental factor.

Count I of plaintiffs' complaint seeks damages equal to 65% of the ancillary charges. Count II seeks an accounting of CCI's billings to its customers in connection with deliveries made on vehicles leased to CCI by the plaintiffs.

## PROCEDURAL HISTORY

On January 18, 1990, CCI removed this case to Federal court. CCI argued that the lease agreements between it and plaintiffs incorporated provisions of the collective bargaining agreement. CCI asserted that because the collective bargaining agreement defined an essential term of the lease agreements, "gross revenues," plaintiffs'

claims were, in essence, claims for breach of the collective bargaining agreement. Thus, CCI maintained that a Federal question was raised under the Labor Management Relations Act (29 U.S.C. § 185(a) (1988)), which provides jurisdiction over suits alleging violations of collective bargaining agreements.

On May 25, 1990, the Federal district court remanded the case to the circuit court of Cook County, finding that no Federal question was presented by this case:

"The dispute before us does not involve a breach of the collective bargaining agreement. Nor is resolution of 'plaintiffs' claims 'inextricably intertwined with consideration of the terms of the labor contract.' [Citation.] Rather, the dispute is over the parties' rights under the lease agreements, some of which incorporate certain portions of the collective bargaining agreement.

***'[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.' [Citation.] *** The rights plaintiffs assert under the lease agreements are independent of any rights they may have under the collective bargaining agreement." (Emphasis in original.) (*Kennedy v. Commercial Carriers, Inc.* (N.D. Ill. 1990), 739 F. Supp. 406, 411.)

The issue of whether plaintiffs' claims are subject to arbitration was neither raised before, nor decided by the district court.

Following remand to the circuit court, CCI moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). Specifically, CCI argued that plaintiffs' claims were preempted by section 301 of the Labor Management Relations Act because their claims depended upon an analysis of the collective bargaining agreements.

In ruling on CCI's motion, the circuit court adopted the reasoning of the district court and concluded that the collective bargaining agreement had nothing to do with rents due under plaintiffs' equipment leases with CCI. Therefore, the court denied CCI's motion to dismiss the case on preemption grounds.

On May 8, 1992, CCI moved to compel arbitration of plaintiffs' claims. CCI asserted two grounds in support of its motion to compel: the lease agreements incorporated the provisions of the collective bargaining agreement which included a mandatory arbitration clause; and the collective bargaining agreement evidenced an independent intent to arbitrate disputes of this nature.

On October 1, 1992, the circuit court denied the motion to compel arbitration. The court held that the arbitration clause of the collec-

tive bargaining agreement had not been incorporated into the leases, and there was no clear expression of intent within the collective bargaining agreement to have the grievance procedure in that agreement apply to the lease dispute presented by plaintiffs. This appeal followed.

OPINION

Initially, plaintiffs contend that, assuming *arguendo* that a right to arbitration exists, CCI waived that right. The circuit court expressly found that waiver was not applicable in this case.

■ Waiver of the right to arbitrate may occur when a party acts in a manner which is inconsistent with the arbitration clause, thus indicating abandonment of the right. (*TDE Ltd. v. Israel* (1989), 185 Ill. App. 3d 1059, 1067; *Kostakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 536.) A party's conduct amounts to waiver when the party admits an arbitration agreement exists, yet submits issues which are arbitrable under the contract to a court for decision. (*TDE Ltd.*, 185 Ill. App. 3d at 1067; *Kostakos*, 142 Ill. App. 3d at 536.) Illinois courts disfavor a finding of waiver of the right to arbitrate. *TDE Ltd.*, 185 Ill. App. 3d at 1067; *Kostakos*, 142 Ill. App. 3d at 536.

■ In the instant case, CCI filed two motions prior to seeking to compel arbitration. First, CCI attempted to remove the case to Federal court on the basis that the dispute involved a collective bargaining agreement and, thus, was preempted by Federal labor law. Second, CCI moved to dismiss the case from State court due to lack of subject matter jurisdiction. Neither of these motions constitutes conduct demonstrating an intent to abandon the right to arbitrate. It is axiomatic that jurisdiction must lie before a court decides any other issue in a case, including the question of arbitrability. The circuit court properly rejected plaintiffs' waiver argument. We turn now to the merits of this appeal.

■ Arbitration is a matter of contract, and a party cannot be required to arbitrate any dispute which he or she has not agreed to arbitrate. (*United Cable Television Corp. v. Northwest Illinois Cable Corp.* (1989), 128 Ill. 2d 301, 310; *Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 988.) In determining whether a particular dispute is subject to arbitration, our courts apply a more stringent test to disputes which arise from commercial undertakings than disputes which stem from collective bargaining agreements. *Lehman*, 107 Ill. App. 3d at 988; *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 374.

CCI argues that this case involves the interpretation of a collective bargaining agreement and, therefore, there is a presumption of

arbitration. (See *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417-18, 80 S. Ct. 1347, 1353.) CCI maintains that we must apply the standard applicable to collective bargaining disputes which was set forth by the Supreme Court in *United Steelworkers*: "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers*, 363 U.S. at 582-83, 4 L. Ed. 2d at 1417-18, 80 S. Ct. at 1353.

Plaintiffs, on the other hand, argue that their lease dispute is independent of the collective bargaining agreement and, therefore, we should apply the more stringent standard of review applicable to commercial arbitration disputes. This standard provides that parties are only bound to arbitrate those issues which the parties agreed by clear language to arbitrate. See, *e.g.*, *CAC Graphics, Inc. v. Taylor Corp.* (1987), 154 Ill. App. 3d 283, 286.

Although the Federal district court did not address the question of arbitrability, the court's conclusions about the nature of this case are instructive. In determining whether plaintiffs' suit was preempted by Federal labor law, the district court made the following findings:

> "The dispute before us does not involve a breach of the collective bargaining agreement. Nor is resolution of plaintiffs' claims 'inextricably intertwined with consideration of the terms of the labor contract.' [Citation.] ***
>
> *** The rights plaintiffs assert under the lease agreements are independent of any rights they may have under the collective bargaining agreement.
>
> * * *
>
> *** [T]he lease agreements are not contracts between an employer and a labor organization and *resolution of the dispute between Commercial and its lessors does not turn on the intentions of the parties to the collective bargaining agreement.*" (Emphasis added.) *Kennedy*, 739 F. Supp. at 411.

■ We agree with the district court's characterization of the instant dispute. Plaintiffs' complaint asserts independent State law rights under a lease agreement, and the analysis of those rights is not dependent upon interpretation of the collective bargaining agreement. Therefore, the resolution of this dispute is neither preempted by, nor controlled by Federal labor law.

Because this dispute arises from a private lease agreement as opposed to a collective bargaining agreement, no presumption of arbitration applies. Instead, the parties are bound to arbitrate only

those issues which by clear language they have demonstrated an intention to arbitrate. *Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 387; *Lehman,* 107 Ill. App. 3d at 989; *CAC Graphics,* 154 Ill. App. 3d at 286.

None of the lease agreements provide for arbitration or even mention the word "arbitration." On the other hand, the collective bargaining agreement in effect at the time did contain a provision mandating arbitration, and that provision provided:

> "Unless otherwise expressly provided in this Agreement, any and all disputes, including interpretations of contract provisions arising under, out of, in connection with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of the Agreement."

CCI maintains that the parties intended to incorporate the terms of the collective bargaining agreement, including the grievance clause, into the lease agreements. CCI asserts that the following clause which is contained in the majority of plaintiffs' lease agreements evidences the parties' intent to incorporate the provisions of the collective bargaining agreement:

> "This contract constitutes the entire agreement between the parties and supersedes all prior agreements between the parties covering the same subject matter, except those provisions clearly effective and applicable to the collective bargaining agreements as they pertain to lessor, which provisions are incorporated herein by reference."

According to CCI, the integration clause should be read to incorporate all the terms of the collective bargaining agreement that are clearly effective and applicable to the collective bargaining agreement as they pertain to the lessor. We find this interpretation unpersuasive. Plaintiffs, on the other hand, assert that the integration clause incorporates certain terms of the collective bargaining agreement but not others. Plaintiffs maintain that the grievance clause is not incorporated.

In our view, the meaning of the integration clause is definitely unclear. We note that the district court was puzzled by the meaning of this clause as well. (See *Kennedy,* 739 F. Supp. at 411 n.6.) Moreover, the integration clause fails to demonstrate a clear intention by the parties to submit lease disputes to arbitration. Therefore, CCI's argument that the parties intended to incorporate and be bound by the grievance clause of the collective bargaining agreement must fail.

■ CCI next contends that the lease dispute is governed by the grievance procedure in the collective bargaining agreement because

the lease agreement and the collective bargaining agreement involve the same subject matter. (See, *e.g., A.E. Staley Manufacturing Co. v. Robertson* (1990), 200 Ill. App. 3d 725.) CCI points out that the grievance clause provides that "all disputes, including interpretations of contract provisions arising \*\*\* in connection with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of the Agreement." CCI directs our attention to a provision of the collective bargaining agreement which establishes a minimum rental rate for transport equipment:

> "(a) For the purpose of protecting the established driver's rates and established conditions, minimum rental rates for the leasing of equipment owned by employee shall be determined by negotiations between the parties in each locality, for the equipment used in that locality. At no time will the rental be less than the following:
>
> Tractors only—65% of gross revenue;
>
> Tractors trailers and/or semi-trailers—75% of gross
>
> revenue; or as otherwise provided for in Local Riders. \*\*\* Gross revenue for the purpose of this Agreement is defined as total tariff proceeds received by the carrier exclusive of all arbitrary and ancillary charges which are justified."

Thus, CCI maintains that because the collective bargaining agreement establishes a minimum rate at which CCI can lease transport equipment, the lease agreement and the collective bargaining agreement involve the same subject matter. CCI relies primarily on *A.E. Staley*, 200 Ill. App. 3d 725, to support its argument.

In *A.E. Staley*, defendant was an executive of A.E. Staley Manufacturing Company, and he entered into a contractual agreement with the company known as the management retention agreement (MRA). The MRA defined defendant's retirement agreements and provided that executives were "eligible to receive \*\*\* a retirement benefit equivalent to the retirement benefits payable under all retirement plans of Staley [(emphasis omitted)] \*\*\* *including any supplemental retirement plans*." (Emphasis in original.) (*A.E. Staley*, 200 Ill. App. 3d at 727.) The MRA included an arbitration clause which provided:

> " 'Any controversy or claim arising out of or relating to this Agreement, or any breach hereof, shall be settled by arbitration \*\*\*.' " *A.E. Staley*, 200 Ill. App. 3d at 728.

Subsequently, the parties entered into a supplemental executive retirement plan (SERP) which provided selected executives with additional retirement benefits. The SERP did not contain an arbitration clause.

A dispute ensued over the amount of benefits to be awarded under

the SERP, and defendant moved to compel arbitration. The trial court denied the motion to arbitrate. The appellate court reversed, holding that: (1) the subject matter of both agreements was the same: benefits to be afforded to defendant in the event of his retirement or termination; and (2) the two documents were properly construed as one contract. *A.E. Staley*, 200 Ill. App. 3d at 730-31.

*A.E. Staley* is distinguishable from the instant case. In *A.E. Staley*, there was a clear relationship between the two agreements. The SERP was a "supplemental" agreement between the same parties, dealing with the same subject matter as the original agreement, and modifying the terms of the original agreement.

In the case at bar, however, there is no clear relationship between the collective bargaining agreement and the lease agreements. The collective bargaining agreement is the product of negotiations between CCI and the Union, and it governs the employer-employee relationship at CCI. In contrast, the lease agreements were the product of negotiation between individual plaintiffs, in their capacity as truck owners, and CCI. These agreements govern the lessor-lessee relationship between the individual plaintiffs and CCI. The collective bargaining agreement is a voluminous document which contains one reference to CCI's ability to lease transport equipment. The collective bargaining agreement does not purport to govern the terms of any lease agreements which CCI might enter into. It merely establishes minimum rental rates. CCI and its equipment lessors were free to negotiate any rate they desired so long as that rate equaled or exceeded the minimum rate established in the collective bargaining agreement. The parties were also free to negotiate any other terms they desired, including whether they wished to arbitrate disputes. We conclude that the two documents do not involve the same subject matter and cannot be construed as one contract.

■ Finally, CCI argues that the grievance clause in the collective bargaining agreement is broad enough to reach out and engulf "any and all disputes" between the parties, including disputes arising from independent contracts, like the lease agreements. CCI argues that nothing in the grievance clause indicates an intent to limit the type of disputes that are subject to arbitration. CCI posits that under the plain meaning of this provision, plaintiffs' claims are arbitrable because they involve a dispute between CCI and its employees.

Plaintiffs respond that CCI's expansive interpretation leads to absurd results. Plaintiffs assert, for example, that under CCI's interpretation, if one of CCI's trucks struck one of plaintiffs' wives in an automobile accident, the plaintiff would have to arbitrate his claim for loss of consortium. Plaintiffs suggest that the arbitration clause

was intended to be limited to "grievances" and assert that "grievance" has been defined as a complaint for breach of a collective bargaining agreement. See *International Association of Machinists & Aerospace Workers, Progressive Lodge No. 1000 v. General Electric Co.* (7th Cir. 1989), 865 F.2d 902, 905-06.

We decline to read the grievance clause as broadly as CCI urges. If we were to do so, all employees covered by a collective bargaining agreement would be precluded from entering into any agreement independent of the collective bargaining agreement; all individual agreements would be subsumed by the collective bargaining agreement. The Supreme Court has unequivocally held that this is not the law:

> "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." (Emphasis in original.) (*Caterpillar, Inc. v. Williams* (1987), 482 U.S. 386, 396, 96 L. Ed. 2d 318, 330, 107 S. Ct. 2425, 2431.)

Moreover, in the *Caterpillar* case, Caterpillar argued that if the Court allowed employees to assert rights independent of the collective bargaining agreement which were not preempted by Federal labor law, the paramount national labor policy of referring disputes to arbitration would be offended. On the facts of that case, the Court held that the arbitration clause contained in the collective bargaining agreement had no application to claims which arose out of individual employment contracts. *Caterpillar*, 482 U.S. at 399 n.15, 96 L. Ed. 2d at 331 n.15, 107 S. Ct. at 2433 n.15.

We conclude that the same is true here. Plaintiffs have brought claims based upon independent lease contracts that are governed by State law, and the grievance clause in the collective bargaining agreement has no application to these independent lease agreements.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.