IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2002 Session

## DAVID FROUNFELKER v. IDENTITY GROUP, INC.

**Direct Appeal from the Chancery Court for Putnam County**
**No. 2001-141     Vernon Neal, Chancellor**

_____

**No. M2001-02542-COA-R3-CV - Filed June 5, 2002**

_____

Plaintiff agreed to sell his company to Defendant pursuant to an Asset Purchase Agreement. In addition to acquiring the assets of Plaintiff's company, Defendant agreed to hire Plaintiff for a one year term. The Asset Purchase Agreement contained an arbitration clause, and the Employment Agreement provided judicial remedies in the event of a dispute. Plaintiff sued Defendant for the breach of the Employment Agreement, asserting that Defendant terminated his employment prior to the one year term. Plaintiff determined his hiring date from the Asset Purchase Agreement. Defendant filed a motion to compel arbitration, which the trial court denied. Defendant appeals the trial courts ruling. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Kenneth Douthat, Nancy A. Vincent, and W. Edward Ramage, Nashville, Tennessee; Carole S. Katz, Darren P. O'Neill, of counsel, Pittsburgh, Pennsylvania, for the appellant, Identity Group, Inc.

Jon E. Jones and Cynthia A. Wilson, Cookeville, Tennessee, for the appellee, David Frounfelker.

### OPINION

David Frounfelker established and operated a business named D.L. Technologies, Inc. D.L. Technologies was a business competitor of Identity Group, Inc. In the early months of 2000, Mr. Frounfelker and Identity began to negotiate the sale of D.L. Technologies to Identity. The negotiations proved fruitful, and Identity agreed to purchase the assets of D.L. Technologies. Additionally, Identity agreed to employ Mr. Frounfelker.

On March 15, 2000, Mr. Frounfelker, D.L. Technologies, and Identity effectuated the sale of D.L. Technologies' assets to Identity by executing an Asset Purchase Agreement. The Asset

Purchase Agreement contains an arbitration provision which states, "[a]ny dispute, controversy or claim arising out of, relating to, or in connection with, this Agreement shall be finally settled by binding arbitration." On the same day, Mr. Frounfelker and Identity executed an Employment Agreement. The Employment Agreement does not contain an arbitration clause, but instead provides judicial remedies in the event of a breach by one of the parties.

The Employment Agreement governed Mr. Frounfelker's term of employment with Identity. According to the Employment Agreement, Mr. Frounfelker's term of employment was slated to end on the twelve-month anniversary of the "Commencement Date." The Employment Agreement stated that the Commencement Date was March 15, 2000. The employment term could only be renewed or extended with the mutual consent of Mr. Frounfelker and Identity.

On March 14, 2001, Mr. Frounfelker and Identity agreed to extend the employment term one additional week, until March 21, 2001. During this time, the parties attempted to work out a renewal agreement. Their efforts proved unsuccessful, and Mr. Frounfelker's term of employment ended on March 21, 2001.

Soon after the termination of his employment, Mr. Frounfelker filed a complaint seeking certain payments from Identity pursuant to the Employment Agreement. The Employment Agreement contained a section entitled "Termination." According to that section, Mr. Frounfelker was entitled to certain remedies in the event Identity terminated his employment "prior to the twelve month anniversary of the Commencement Date."

In his complaint, Mr. Frounfelker asserted that "the parties intended that the Employment Agreement would be executed and effective as of the time the employment actually commenced. The date of the actual commencement of employment was April 1, 2000." To support his claim, Mr. Frounfelker maintained that the parties contemplated that the sale of the assets would take place within the weeks following the execution of the Asset Purchase Agreement. Mr. Frounfelker further alleged, according to the Asset Purchase Agreement, that the parties understood that his employment would not begin until the asset sale was "closed and consummated." Because the asset sale closed on March 31, 2000, and Mr. Frounfelker began working for Identity on April 1, 2000, Mr. Frounfelker contended that Identity terminated his employment within his first twelve months of employment, constituting a breach of the Employment Agreement.

In response to Mr. Frounfelker's complaint, Identity moved the trial court to dismiss the complaint and to order Mr. Frounfelker to proceed with arbitration as mandated by the Asset Purchase Agreement. The trial court denied Identity's motion. Identity appeals the trial court's ruling.[1] The issue, as stated by Identity, is the following:

---

[1] Pursuant to section 29-5-319(a)(1) of the Tennessee Code, this appeal is properly before this Court.

In light of Tennessee's strong presumption in favor of arbitrability, did the Chancery Court err by denying Identity's Motion to Dismiss the Complaint and Order Plaintiff to Proceed with Arbitration for either one of the following independent reasons:

> (1)    Plaintiff's complaint on its face relies upon an interpretation of an Asset Purchase Agreement executed by the parties which mandates arbitration for all claims arising out of, relating to, and/or in connection with the Asset Purchase Agreement?

> (2)    The Employment Agreement relied upon by Plaintiff in making his claim was executed together with the Asset Purchase Agreement as part of a single transaction and is therefore governed by the Asset Purchase Agreement's arbitration provision.

The trial court's decision to deny Identity's motion to compel arbitration was based upon an interpretation of the contract between Identity and Mr. Frounfelker. The interpretation of a contract is a matter of law; therefore, our review of the trial court's decision is *de novo* with no presumption of correctness. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999).

The General Assembly's enactment of the Uniform Arbitration Act manifests a legislative policy favoring the enforcement of arbitration clauses. ***Buraczynski v. Eyring***, 919 S.W.2d 314, 318-19 (Tenn. 1996). Section 29-5-302 of the Tennessee Code states as follows:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

Tenn. Code Ann. § 29-5-302 (2000). In light of the Uniform Arbitration Act, Tennessee's courts are vested with the responsibility to give as broad of a construction to arbitration agreements as the words and intentions of the parties will allow. ***Wachtel v. Shoney's Inc.***, 830 S.W.2d 905, 908 (Tenn. Ct. App. 1991). Accordingly, courts are to construe arbitration agreements in favor of the arbitration of disputes. ***Merrimack Mut. Fire Ins. Co. v. Batts***, 59 S.W.3d 142 (Tenn. Ct. App. 2001).

With these policies in mind, we turn to Identity's issues. In its first issue, Identity maintains that the trial court erred because "from the face of the complaint, there can be no doubt that [Mr. Frounfelker's] claim arises out of, relates to, and/or is in connection with the asset purchase agreement and therefore, that it must be resolved in arbitration." Identity contends that the broad language employed by the parties in the Asset Purchase Agreement evidences an intent to have the arbitration clause apply to disputes beyond those that merely allege a breach of that agreement.

Identity argues that the parties intended that the arbitration clause would include disputes directly related to or connected to the agreement. Because Mr. Frounfelker's claim directly refers to and invokes the Asset Purchase Agreement, Identity contends that the arbitration clause in the agreement must apply to the parties' present dispute.

In deciding whether parties agreed to arbitrate a particular issue, courts should apply ordinary state law principles. *Frizzell Const. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). Because we are required to interpret the arbitration clause in the Asset Purchase Agreement, we must follow Tennessee law regarding the interpretation of contracts. *Id.* The key principle regarding contract interpretation is to

> 'ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.' *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Courts may determine the intention of the parties 'by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms.' *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990). No single clause in a contract is to be viewed in isolation; rather, the contract is to be 'viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.' *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).

*Id.*

While we are mindful of Tennessee's policy requiring a broad construction of arbitration agreements such as the one presently before us, we do not agree that the arbitration clause at issue reaches the parties' dispute in the present case. The clause at issue states that "[a]ny dispute, controversy or claim arising out of, relating to, or in connection with, this Agreement shall be finally settled by binding arbitration." It is clear that the "dispute, controversy, or claim" is whether Identity terminated Mr. Frounfelker's employment prematurely in violation of the parties employment agreement. Mr. Frounfelker references the Asset Purchase Agreement in an effort to establish his hiring date to further his claim based on the Employment Agreement. This date is a fact that is derived from the Asset Purchase Agreement. The date itself is not a dispute, controversy, or claim encompassed by the arbitration clause. The dispute is whether Mr. Frounfelker was terminated early,

and it is established by the hiring date, which is clearly referenced in the Asset Purchase Agreement.[2]

The scope of the arbitration clause is evidenced by the parties intent. The terms and provisions of the Asset Purchase Agreement, as well as its subject matter, do not concern Mr. Frounfelker's term of employment, nor do they give rise to his action for early termination. As such, it is clear that the parties did not intend the arbitration clause to govern Mr. Frounfelker's present claim. Because the parties did not intend for the arbitration agreement to reach matters such as reference to the asset purchase agreement in order to establish a hiring date, we hold that the trial court did not err by failing to compel arbitration due to Mr. Frounfelker's reference to the Asset Purchase Agreement in his complaint.

In Identity's second issue, it asserts that the arbitration clause in the Asset Purchase Agreement governs disputes in the employment agreement because the two documents were executed as part of the same transaction. Identity maintains that courts "have routinely acknowledged that agreements executed together as part of a single transaction are construed together and therefore that agreements ancillary to an agreement containing an arbitration provision are subject to that arbitration provision." We agree that courts will consider the terms of separate agreements that are made as part of an overall transaction together. *Realty Shop, Inc. v. RR Westminster Holding*, 7 S.W.3d 581, 599 (Tenn. Ct. App. 1999); *Stovall v. Dattel*, 619 S.W.2d 125, 127 (Tenn. Ct. App. 1981). We are, however, unwilling to reach the conclusion that Identity contends is warranted by that rule in the present case.

Identity cites several cases from other jurisdictions to illustrate that courts will compel arbitration of claims arising under one agreement that is part of a larger agreement when the larger agreement contains an arbitration clause.[3] Decisions from other jurisdictions regarding the Uniform Arbitration Act are relevant to our decision in the present case due to the legislature's desire to "make uniform the law of those states which enact [the Uniform Arbitration Act]." Tenn. Code Ann. § 29-5-320 (2000); *see also Buraczynski v. Eyring*, 919 S.W.2d 314, 319 (Tenn. 1996). The cases that Identity cites, however, are not relevant to the case *sub judice*.

---

[2]Identity asserts that both parties acknowledge that in deciding whether a dispute is arbitrable, courts focus "on the factual underpinnings of the claim rather than the legal theory." Because Mr. Frounfelker's claim references a fact in the Asset Purchase Agreement, Identity contends that this weighs heavily in favor of the arbitration of this dispute. We acknowledge that courts must focus on the factual underpinnings of the claim rather than the legal cause of action asserted. *See, e.g., Genesco, Inc. V. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d. Cir. 1987). This is because, however, litigants will often attempt to design their pleadings outside the scope of arbitration agreements by asserting a variety of causes of action. When courts look to the factual underpinnings of the claim, courts are determining whether the facts make out a claim encompassed by the arbitration clause. In the present case, the asset purchase agreement does not create or give rise to any claims regarding the early termination of Mr. Frounfelker. Mr. Frounfelker's claim arises solely from the employment agreement.

[3]Identity calls our attention to the following cases: *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34 (5th Cir. 1990), *Raesly v. Grand Housing, Inc*.105 F. Supp.2d 562 (S.D. Miss. 2000), *Reynolds & Reynolds Co. v. King Automobiles, Inc.*, 689 So.2d 1 (Ala. 1996), *A.E. Staley Manufacturing Co. v. Robertson*, 558 N.E.2d 434 (Ill. App. Ct. 1990), and *B.F. Goodrich Co. v. McCorkle*, 865 S.W.2d 618 (Tex. Ct. App. 1993).

In the present case, the parties signed two separate agreements which constitute, according to the Asset Purchase Agreement, the "entire understanding of the parties." The Asset Purchase Agreement contains an arbitration clause that applies specifically to that agreement. The Employment Agreement clearly provides judicial remedies for disputes arising under that agreement.[4] In the cases cited by Identity, each had two or more separate agreements with one agreement containing an arbitration clause. None of the cases concerned two or more agreements containing two different methods for the resolution of disputes, and the various courts made that fact abundantly clear in their respective decisions. In fact, one court found it determinative that one of the agreements failed to contain a provision governing dispute resolution while the other agreement contained a provision mandating the arbitration of the parties' disputes. *B.F. Goodrich Co.*, 865 S.W.2d at 620-21. The court went on to state that if the plaintiff "had intended [the agreement] not to be subject to arbitration, it could have said so in the contract." *Id.* at 621.

It is well-established that "parties cannot be forced to arbitrate claims that they did not agree to arbitrate." *Frizzell Const. Co.*, 9 S.W.3d at 84. Parties may agree to submit certain issues to arbitration and provide a separate method of dispute resolution for other issues. *See id.* In construing the documents together in the present case, we are compelled to reach the conclusion that the parties intended for disputes arising from the Employment Agreement to be decided in a judicial forum. The parties included specific provisions governing disputes relating to the Employment Agreement. The intent of the parties regarding this issue is clear and unambiguous; therefore, we must give these provisions effect. As the dispute in this case is before us as a result of the

---

[4]The Employment Agreement contains three separate provisions that contemplate the judicial resolution of the parties' disputes arising under that agreement. These provisions state as follows:

6.04. <u>Consent to Jurisdiction</u>. Each of the Company and Executive hereby irrevocably submits to the personal jurisdiction of the United States District Court or any state court sitting in Nashville, Tennessee in any action or proceeding arising out of or relating to this Agreement, and each of the Company and Executive hereby irrevocably agrees that all claims in respect of any such action or proceeding may be heard and determined in any such court.

6.05. <u>Service of Process</u>. Each of the Company and Executive hereby irrevocably consents to the service of any summons and complaint and any other process which may be served in any action or proceeding arising out of or related to this Agreement brought in the United States District Court or any state court sitting in Nashville, Tennessee by the mailing by certified or registered mail (with returned notice of receipt) of copies of such process to such party at its or his address as set forth on the signature page hereof.

6.06 <u>Venue</u>. Each of the Company and Executive hereby irrevocably waives any objection which it or he now or hereafter may have to the laying of venue of any action or proceeding arising out of or relating to this Agreement brought in the United States District Court or any state court sitting in Nashville, Tennessee and any objection on the ground that any such action or proceeding in either of such Courts has been brought in an inconvenient forum. Nothing in this Section 6.06 shall affect the right of the Company to bring any action or proceeding against Executive in the courts of other jurisdictions where Executive may be found or served with process.

Employment Agreement, the dispute is governed by the method of dispute resolution mandated by that agreement. Accordingly, we find Identity's argument without merit.

We affirm the trial courts decision denying Identity's motion to compel arbitration. Costs of this appeal are taxed to the appellant, Identity Group Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE