(No. 66248.—

UNITED CABLE TELEVISION CORPORATION, Appellee, v. NORTHWEST ILLINOIS CABLE CORPORATION, Appellant.

*Opinion filed April 20, 1989.*

Richard L. Thies and Daniel P. Wurl, of Webber & Thies, P.C., of Urbana, and Channing L. Pratt, of Beal, Pratt, Pratt & Stombaugh, of Monmouth, for appellant.

Luke DeGrand, of Isham, Lincoln & Beale, and John W. Treece, of Sidley & Austin, all of Chicago, and Dwayne I. Morrison, of Barash, Stoerzbach & Henson, of Galesburg, for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal involves the arbitrability of controversies which have arisen between parties to a limited partner-

ship agreement. Northwest Illinois Cable Corporation (Northwest), a general partner, pursuant to an arbitration clause in the partnership agreement, made a formal demand upon United Cable Television Corporation (United), in its capacity as managing general partner, for arbitration of disputes concerning the distribution of profits, the allocation of tax credits and the holding of partnership funds in a non-interest-bearing savings account. When United moved for a stay of arbitration proceedings, pursuant to section 2(b) of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(b)), the circuit court of Knox County denied its application with respect to the dispute regarding the distribution of profits, but granted the stay with respect to the disputes concerning the allocation of tax credits and the holding of funds in a non-interest-bearing account. United appealed from the portion of the judgment denying its motion with regard to the distribution of profits and Northwest cross-appealed from the portions of the judgment which allowed United's motion for a stay. The appellate court held that none of the disputes were arbitrable. (162 Ill. App. 3d 411.) We allowed Northwest's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315).

The limited partnership, known as Northwest Illinois Cable TV Company (the Company), was formed in March 1971 for the purpose of acquiring and operating two cable TV systems. The partnership consists of two general partners and one limited partner. Northwest and LVOC Management, Inc. (LVOC), are general partners. LVOC is a wholly owned subsidiary of United. United is also the limited partner.

The major disagreement concerns the distribution of accumulated profits. A substantial disparity (the exact amount of which is not indicated in the record) between the capital accounts of United and Northwest developed after an amendment to the original partnership agree-

ment altered the terms for the distribution of profits, while retaining the original terms for the allocation of profits. Under the terms of the amendment, which was entered into in December of 1972 and was in effect for 11 years, the amount of profits actually distributed to Northwest was less than the amount of profits being allocated to it. This created the disparity in the capital accounts.

Upon rescission of the amendment in 1983, Northwest claimed that it was entitled to an immediate distribution of the profits accumulated in its capital account. United, however, did not agree to an immediate distribution, contending that the partnership agreement provided for such distribution only at the termination of the partnership.

Although this dispute over the distribution of profits was the principal disagreement between the parties, Northwest also claims that tax investment credits were being improperly allocated and that United's placing partnership funds in a non-interest-bearing bank account constituted a waste of partnership assets. Northwest demanded arbitration of all three disputes pursuant to a clause in the partnership agreement which provides for arbitration:

"[i]n the event that the general partners fail to agree on a matter on which their agreement is required affecting the general policy of the Company (other than the incurring of indebtedness by the Company ***) that would, in the judgment of either general partner, materially or adversely affect the business or prospects of the Company."

Upon notification by Northwest of its demand for arbitration, United, pursuant to section 2(b) of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(b)), sought a stay of arbitration in the circuit court of Knox County. United contended, as it does here, that none of the disputes were arbitrable under the

terms of the partnership agreement's arbitration clause. As stated, the trial court denied United's request for a stay as to the distribution-of-profits dispute, but granted the stay as to the other two disputes.

The appellate court, reversing the trial court in part, held that none of the disputes were subject to arbitration under the partnership agreement because none of the subjects of the dispute affected the "general policy" of the Company. 162 Ill. App. 3d at 413.

This appeal presents the question whether any of the subjects of dispute cited by Northwest are arbitrable under the partnership agreement's arbitration clause.

It is clear that arbitration as a means of dispute resolution is favored. Our legislature demonstrated this in 1961 by enacting the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 101 *et seq.*), which made arbitration agreements legally enforceable and empowered courts, upon application of a party to a dispute, to compel or stay arbitration, or to stay court action pending arbitration. Courts as well have favored arbitration, generally regarding it as an effective and cost-efficient method of resolving disputes. *CAC Graphics, Inc. v. Taylor Corp.* (1987), 154 Ill. App. 3d 283, 286; *Diersen v. Joe Keim Builders, Inc.* (1987), 153 Ill. App. 3d 373, 377; *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 846; *Board of Trustees v. Cook County College Teachers Union* (1981), 102 Ill. App. 3d 681, 683.

While arbitration is a favored method of dispute resolution, courts have consistently cautioned that an agreement to submit to arbitration is a matter of contract. Before an issue can properly be referred to an arbitrator, therefore, the particular dispute must be of the type that the parties have agreed should be submitted to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America* (1986), 475 U.S. 643, 648, 89 L. Ed.

2d 648, 655, 106 S. Ct. 1415, 1418; *Atkinson v. Sinclair Refining Co.* (1962), 370 U.S. 238, 239, 8 L. Ed. 2d 462, 465, 82 S. Ct. 1318, 1320; *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 93; *Monmouth Public Schools, District No. 38 v. Pullen* (1985), 141 Ill. App. 3d 60, 64.

Whether an arbitration agreement encompasses a particular issue is to be determined without consideration of the merits of the issue claimed to be arbitrable. (*Geldermann, Inc. v. Mullins* (1988), 171 Ill. App. 3d 255, 258.) Thus, whether there should be an immediate distribution of profits here is not to be decided. The question for determination is whether the parties, through their written agreement, showed an intent to have these subjects of dispute referred to arbitration.

The issue of arbitrability itself is also properly decided by the court in this case. In *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 447-48, this court held that when the terms of an arbitration clause are so broad that it is not clear whether there should be a reference to arbitration and the parties disagree as to the scope of the arbitration provision, the question of the parties' intent as to the scope, if reasonably debatable, should be submitted to an arbitrator for decision as to the issue's arbitrability. In *Donaldson*, the court said that because the arbitration clause was an omnibus and broadly worded one, the question of arbitrability should be referred to an arbitrator. Under the wording of the clause, "[a]ny controversy *** which arises out of the Exchange business of such parties shall *** be submitted to arbitration," it was unclear whether the subject of the dispute (a claim for compensation) fell within the undefined scope of the arbitration agreement. *Donaldson*, 124 Ill. 2d at 439, 446.

The arbitration agreement here is distinguishable from that in *Donaldson* because the clause here is not of

the "any claim relating to or arising out of" type or, as in *Donaldson*, the "any controversy which arises out of" type. Instead, as both parties agree, the clause here is clearly limited in its scope. Both parties, in briefs and argument to this court, agree that in order for a dispute to be arbitrable three limiting conditions or requirements must be met. First, the dispute must involve a matter on which the general partner's agreement is required. Second, the matter involved must be one affecting the general policy of the company. And third, the matter must be one that would, in the judgment of either party, materially and adversely affect the business or prospects of the Company. Thus, the question here is not the scope of the clause, but instead the definition of the limiting conditions or terms; that is, whether decisions as to distribution of profits, allocation of tax credits and depositing of funds are matters upon which the parties must agree and/or matters of "general policy" affecting the "business" or "prospects" of the Company. As *Donaldson* stated, where the language of the arbitration agreement is clear and it is apparent that the disputes are not within the scope of the arbitration clause, the court should decide the question of arbitration in favor of the party opposing arbitration. (*Donaldson*, 124 Ill. 2d at 445.) Considering the partnership agreement as a whole and the arbitration clause in particular, it is apparent that the subjects of dispute here do not fall within the clearly defined scope of the arbitration clause.

Northwest urges us to broadly construe the language of the arbitration clause. Pointing to *Security Mutual Casualty Co. v. Harbor Insurance Co.* (1979), 77 Ill. 2d 446, and *Notaro v. Nor-Evan Corp.* (1983), 98 Ill. 2d 268, Northwest says that despite the limiting language of the clause, the terms used should still be given a broad construction. United, on the other hand, argues that the language of the arbitration clause should not be

expanded beyond its express terms by construction or implication. *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, is cited for the proposition that disputes can be regarded as within an arbitration clause only if the parties by "clear language" agreed to arbitrate the issue. See also *CAC Graphics, Inc. v. Taylor Corp.* (1987), 154 Ill. App. 3d 283, 286; *Monmouth Public Schools, District No. 38 v. Pullen* (1985), 141 Ill. App. 3d 60, 64; *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 669.

Northwest's contention that the *Security Mutual* and *Notaro* decisions stand for the proposition that arbitration clauses should always be read broadly would create a conflict with the *Flood* decision. The decisions in *Flood* and *Security Mutual* take a different approach in interpreting the applicable arbitration clauses simply because there were different intentions expressed by the parties. The intent of the parties as expressed governs. In *Security Mutual* and *Notaro* the arbitration clauses were completely broad in scope. In *Security Mutual* the arbitration clause provided "[i]n the event of *any dispute* *** *in connection with* this Agreement, such dispute shall be submitted to arbitration," and in *Notaro* the clause provided that "*any objection*" to "*any claim*" not resolved within a specified period of time should be subject to arbitration. (Emphasis added.) (*Security Mutual*, 77 Ill. 2d at 449; *Notaro*, 98 Ill. 2d at 272.) Because there were no intentions expressed to limit the scope of the clauses and the disputes involved clearly were "in connection with" the matters included within the arbitration agreements, the court held the disputes subject to arbitration. In *Flood* and *CAC* on the other hand, the scope of the clauses involved had been specifically limited by the parties. In *Flood* the arbitration clause specifically covered two particular issues: disputes concerning an insured's legal right to recover damages from an

operator of an uninsured vehicle or disputes as to the amount of such damages. The *Flood* court, holding that the scope of the clause could not be expanded beyond its stated terms, refused to submit the parties' dispute involving the plaintiff's coverage under the insurance policy to arbitration. The clause subjected only specific claims to arbitration and did not contain the broad general language found in clauses providing that "any claim arising out of or relating to" the issue was subject to arbitration.

The decisions in *Security Mutual* and *Flood* were based on the expressions of intention by the parties. The public policy favoring the submission of disputes to arbitration does not allow us to do violence to the expressed intention of the parties or to ignore the fundamental that an agreement to submit a dispute to arbitration is contractual in nature. Courts have consistently held that one can be required to arbitrate only what one has agreed to arbitrate.

Here it is apparent that the parties were aware of the choice and effect of broad clauses. They, in fact, had used broad clauses in other provisions of the agreement. For example, the section preceding the arbitration clause made the general partners equally responsible for management decisions and required their "mutual agreement in connection with any matter affecting the business." In regard to the arbitration clause, however, the parties chose to specifically limit the clause to those issues requiring agreement which involved the "general policy" and affected the "business" or "prospects" of the Company. Construing these terms in their ordinary sense and in light of the other provisions of the agreement, we conclude that none of the disputes fall within the scope of the arbitration clause.

In section 2 of the partnership agreement, the parties defined the "business" of the Company as that of "en-

gag[ing] in the cable television business by owning and operating cable television and related systems providing telecommunications services." Matters of "general policy" which affect the "business" or "prospects" of the Company indicate matters which basically concern the successful and competitive selling and servicing in regard to cable TV systems. The disputes here, although they might be significant, involve questions regarding the partnership entity itself and the individual partner's expectations concerning the partnership. These disputes do not fall within the terms of the clause for arbitration.

Northwest contends that each of the disputes meets all three of the requirements necessary to subject a matter to arbitration. First, Northwest says that decisions concerning distribution of profits, allocations of tax credits and holding of partnership funds are matters on which the two partners must agree. Northwest contends that the distribution of profits is a question on which agreement of the general partners is required and thus under the terms of the arbitration clause the question should be arbitrated as a question on which the partners fail to agree. But Northwest disarms its own argument by observing that the partnership agreement has a specific provision that governs the distribution of profits and requires immediate distribution, not distribution upon termination of the partnership. Northwest contends that section 8(B) of the agreement requires that immediate distribution of the accumulated profits be made to it, describing its right as one for breach of contract. It is obvious that if the question has already been covered by agreement—by contract—no further agreement, to use the terms of the clause, of the partners is required. Too, Northwest points to section 16 of the partnership agreement, which it says specifically provides for the allocation of tax credits. Plainly, what already has been agreed upon will not require a future agreement. As to the mi-

nor question of deposit of partnership funds in a non-interest-bearing account, the funds apparently were in the account on a transitional basis and only for a matter of days. There is no indication that the parties failed to agree that, as a matter of general policy, funds should be kept in an interest-bearing account. Northwest says that the action by United constituted a breach of fiduciary duty. Such a contention is not a matter on which the partners' agreement is required. The questions here do not fall within the terms of the arbitration clause. By Northwest's acknowledgement they are the subjects of already agreed upon and defined obligations under the partnership agreement. Agreement upon them is not now required.

In any event, we do not consider that the subjects of the dispute themselves are matters of "general policy" that would potentially materially or adversely affect the "business" or "prospects" of the Company. Northwest argues that in light of each general partner's equal management powers, the term "general policy" should not be read to exclude the internal decisions in which the general partners engage in order to carry on the partnership itself. Taken alone, "general policy" might include many everyday management decisions affecting the Company or the partnership itself. The parties here, however, chose to limit the subjects that would be arbitrable by adding the terms "affecting the business or prospects of the Company." The language "general policy affecting the business or prospects of the Company" to us was intended to refer to matters involving the partnership's business activity, including competitiveness and development in the industry. Under the terms of the clause, the matters in dispute must concern the general policy of the business operation. Here the three issues go primarily to the partnership entity and the relationship between the individual partners.

The Company is in the business of selling and maintaining cable TV services for profit. The circumstances here involving the transitional short-term earning of interest, the distribution of profits and the allocation of credits do not affect the general policy of the Company so as to have an adverse effect on the business of the Company. The depositing of partnership funds in a non-interest-bearing account was a one-time, very short-term occurrence which could have had no effect on the business of the Company. The allocation of tax credits was, likewise, an issue affecting only the partners themselves. Questions concerning the size of the tax credit certainly might affect the general policy of the business, but the method of allocation between the partners once the amount of the credit was determined would not affect the business itself. Finally, distribution of profits earned was, likewise, a matter of internal accounting, of interest to the partners as individuals only. There is no suggestion that the parties did not agree on the distribution because of a fear of adverse financial consequences to the business (an action that may affect the business itself, just as creating indebtedness for the Company could materially or adversely affect the business). In fact, both parties agree that the distribution should be made; the dispute is over when, according to the partnership agreement and as a matter of accounting between the partners, payment should be made. For the reasons given, we affirm the appellate court's judgment that the disputes are not subject to arbitration.

*Appellate court judgment affirmed.*