CHRISTOPHER A. GREEN *et al.*, Plaintiffs-Appellees, v. BANK ONE LA GRANGE, f/k/a First La Grange Bank and Trust, Defendant-Appellant (Bank One La Grange, f/n/a First Illinois Bank and Trust as Trustee, Defendant-Appellee).

Third District   No. 3—94—0201

Opinion filed June 16, 1994.

Michael L. Shakman, of Miller, Shakman, Hamilton, Kurtzon & Schlifke, and Laurie K. Breitenstein, of Banc One Illinois Corp., both of Chicago, and Cory D. Lund, of Hinshaw & Culbertson, of Joliet (Barry A. Miller, of counsel), for appellant.

Michael D. Richman and Michael K. Fridkin, both of Sachnoff & Weaver, Ltd., of Chicago, and Robert J. Baron, of Rooks, Pitts & Poust, of Joliet (Joel S. Feldman, of counsel), for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiffs, Christopher A. Green and Tina M. Green, won $12 million in the 1988 Illinois lottery and became real estate developers. They entered into an agreement with the defendant, Bank One La Grange (the Bank), whereby the Bank agreed to loan money to the Greens for a development project. The Bank asserted that, when it

learned that Mr. Green had attempted to defraud a Las Vegas hotel on a gambling scheme, it refused to continue to loan the money requested by the Greens. Thereafter, the Greens filed a five-count complaint against the Bank to recover for the Bank's alleged breach of a commitment to loan money. The Bank filed a demand for arbitration of the dispute and a motion to compel arbitration. The trial court denied the motion to compel arbitration. The Bank appeals from that decision pursuant to Supreme Court Rule 307(a) (134 Ill. 2d R. 307(a)). We reverse, finding that the arbitration clause at issue is clear and the parties' dispute falls within its parameters. However, we further find that only Mr. Green can be compelled to arbitrate.

The facts are numerous. Since the main issue before us is the arbitrability of the dispute, we will confine our discussion of the facts to those that primarily relate to that issue.

The various pleadings on file show that, in 1990, Mr. Green and the Bank executed a loan commitment letter for the initial loan on a real estate development project in Joliet, Illinois. The parties agreed that Mr. Green would attempt to develop the property in phases, selling a specified number of lots in each successive phase. They also agreed that Mr. Green would submit requests for loans to the Bank on a phase-by-phase basis and that the Bank would act on each request separately.

In connection with the first loan, a number of separate documents were executed by Mr. Green, all dated February 7, 1990. Mrs. Green's signature, however, does not appear on any of the documents. The documents included, *inter alia*, a document entitled "Guaranty of Payment and Performance" (the Guaranty).

The Guaranty contained a clause providing for arbitration of any claim relating to the Guaranty or any document delivered in connection with it. Additionally, the Guaranty contained a waiver of venue provision placing venue in the county where the principal office of the Bank was located.

After the first advance of funds in early 1990, Mr. Green submitted proposals to the Bank for additional funds. Pursuant to the agreement, the Bank considered each request for additional funds separately. Sometime in 1990, Mr. Green sought approval of a loan to pay for the development of phases II and III of the project. The Bank approved that loan also.

Then in 1992, Mr. Green requested an additional loan of $220,000 to pay for site improvements for phase IV and certain other costs. The request was approved by the Bank. For this phase IV loan, Mr. and Mrs. Green and the Bank each signed a loan commitment document which was entitled "Fourth Mortgage Modification Agreement."

The Bank filed the Fourth Mortgage Modification Agreement with the Will County recorder of deeds.

Thereafter, the Greens' relationship with the Bank broke down. The Greens heard that the Bank had told a potential lot purchaser that phase IV infrastructure financing had not been approved. This was important to the Greens because a prospective purchaser would not want to buy if he knew that there was a chance that the infrastructure would not be completed. When Mr. Green confronted the Bank, the Bank denied the existence of an executed loan commitment. Thereafter, the Bank continued to refuse to loan the remaining funds earmarked for phase IV of the infrastructure. Consequently, all sales at the development ground to a halt.

According to the Bank, it believed that Mr. Green had attempted to defraud a hotel in Las Vegas and on that basis refused to loan the Greens the remaining funds for phase IV. The hotel had submitted four drafts to the Bank to cover Mr. Green's gambling debts and the Bank paid them from an escrow account connected with the financing for the construction development.

When monthly installments of interest under the loan documents became due in May and June 1993, there were insufficient funds in the escrow account because of the Bank's payment to the hotel. On June 8, 1993, the Bank sent Green a letter stating that if the interest reserve in the escrow account was not replenished, it would be an event of default. On June 17, the Bank declared the mortgage and note in default and sought the entire principal due under the loan, plus attorney fees, late fees and interest. The Bank also informed Green that if it did not receive payment of the above by June 30, it would file suit.

In response, the Greens filed a five-count lawsuit of their own. Count I alleged that the Bank breached the Fourth Mortgage Modification Agreement by not disbursing the balance of the $220,000 loan amount. Count II alleged that the Bank made fraudulent misstatements in connection with the loan agreement. Count III alleged that the Bank tortiously interfered with an economic advantage. Count IV alleged a tortious interference with contractual relations. Count V alleged that the Bank breached a fiduciary duty owed to the Greens.

The trial court denied the Bank's motion to compel arbitration finding that the arbitration clause in the Guaranty had nothing to do with the Greens' lender liability claim and therefore the Greens were not required to arbitrate. Based on the same rationale, the court found that the waiver of venue clause in the Guaranty was not applicable and therefore venue was proper in Will County. The Bank

appealed the arbitration question pursuant to Supreme Court Rule 307(a). The trial court, however, refused to certify the venue question under Supreme Court Rule 308 (134 Ill. 2d R. 308).

On appeal, the Bank first argues that the trial court erred in finding that the dispute was not subject to arbitration. The Bank contends that the trial court erroneously found that the lawsuit had to arise out of the guaranty to be an arbitrable dispute.

We note that arbitration as a means of dispute resolution is clearly favored. (*United Cable Television Corp. v. Northwest Illinois Cable Corp.* (1989), 128 Ill. 2d 301, 538 N.E.2d 547.) Nonetheless, courts have cautioned that an agreement to submit to arbitration is a matter of contract. Before an issue can properly be referred to arbitration, therefore, the particular dispute must be of the type that the parties have agreed should be submitted to arbitration. (*United Cable Television Corp.*, 128 Ill. 2d 301, 538 N.E.2d 547.) Thus, the key factor in determining arbitrability is the intent of the parties and the paramount factor in determining the parties' intention is the scope of the arbitration clause in the contract. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439.) The question of whether an arbitration agreement encompasses a particular issue is to be determined without regard to the merits. *United Cable Television Corp.*, 128 Ill. 2d 301, 538 N.E.2d 547.

Where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, the court should compel arbitration. (*Barr*, 124 Ill. 2d 435, 530 N.E.2d 439.) On the other hand, if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the party opposing arbitration, because there is no agreement to arbitrate. (*Barr*, 124 Ill. 2d 435, 530 N.E.2d 439.) However, when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator. *Barr*, 124 Ill. 2d 435, 530 N.E.2d 439.

In the case at bar, the Guaranty provided that the borrower unconditionally guaranteed full and prompt payment of any loan, advance, or financial accommodation extended to the borrower at the time of the first loan commitment "or at any time hereafter." The arbitration clause in the Guaranty then went on to provide:

> "Any controversy or claim arising out of or relating to this Guaranty or out of any agreements or instruments required or referenced hereunder or delivered in connection herewith, or the

breach thereof, including, but not limited to, a claim arising from a tort, shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association."

After examining this clause and applying the relevant case law, we find that the instant arbitration clause is clear. We further find that the dispute to be arbitrated clearly falls within the language of the clause. When reading the whole of the Guaranty together with the arbitration clause, it is apparent that it was the parties' intent that the phase IV loans were to be guaranteed and that any controversy arising out of a loan commitment was to be arbitrated.

■ The Greens contend that the Guaranty's arbitration language cannot be applied to a lender liability claim based on money not loaned. The Greens claim that no notes were issued in connection with the Fourth Mortgage Modification Agreement and therefore the arbitration language in the Guaranty is not applicable to this dispute. The Greens' contention misses the point. The language in the arbitration clause in the Guaranty is not limited to claims based only on money loaned. The clause states that it applies to any claim relating to the Guaranty or out of any agreements or instruments delivered *in connection with* the Guaranty.

It is apparent from the Greens' pleadings that their entire complaint is premised on the Fourth Mortgage Modification Agreement. That document specifically provides that "Green does hereby acknowledge and reaffirm his Guaranty as to the notes." Since the document specifically mentions the Guaranty, the Greens cannot escape the fact that it is a document delivered in connection with the Guaranty.

The Greens claim that a note was not issued. We find, however, that this is not significant because it was not the note, or the lack thereof, from which the dispute arises. Rather, it is the Fourth Mortgage Modification Agreement which gives rise to the dispute and is the document "delivered in connection with" the Guaranty. Accordingly, we find that the dispute falls within the scope of the arbitration clause.

The Greens rely on *Johnson v. Noble* (1992), 240 Ill. App. 3d 731, 608 N.E.2d 537, for the proposition that a court cannot graft a broad arbitration clause from one contract onto a related contract when the subject matter differs. We find, however, that the *Johnson* rationale is inapplicable here. In *Johnson*, the clause in question simply stated "any claim or controversy arising out of or relating to this agreement" was arbitrable. In our case, the language of the arbitration clause went well beyond that of *Johnson* by providing

that it applied to any claim arising out of a document delivered in connection with the Guaranty. Unlike the agreements in *Johnson* and *Nagle v. Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C.* (1993), 244 Ill. App. 3d 920, 613 N.E.2d 331 (also relied upon by the Greens), the second document specifically made reference back to the arbitration agreement. Furthermore, the contract in *Johnson* that did not contain the arbitration clause was an oral one that was entered into *before* the contract containing the arbitration clause. Here, the contract without the arbitration clause was entered into after the arbitration clause contract and again it specifically made reference back to it.

Having determined that Mr. Green can be compelled to arbitrate, we must now decide whether Mrs. Green can be compelled to arbitrate. Mrs. Green did not execute and was not a party to the Guaranty. The Bank argues that Mrs. Green reaffirmed and ratified the Guaranty in the Fourth Mortgage Modification Agreement (hereinafter Modification) and therefore should be compelled to arbitrate.

■ We note, however, that the Modification only states that "the Security Documents are hereby ratified and reaffirmed" and further that "Green does hereby acknowledge and reaffirm *his* Guaranty as to the notes." Nowhere in the Modification is it specifically mentioned that Mrs. Green ratified the Guaranty. The Bank cites *Bolingbrook Park District v. National-Ben Franklin Insurance Co.* (1981), 96 Ill. App. 3d 26, 420 N.E.2d 741, in support of its position that Mrs. Green ratified the Guaranty. However, that case involved a situation where the arbitration clause incorporated by reference the underlying contract. Here, however, there was not an incorporation by reference. Furthermore, we note that even if Mrs. Green had been a third-party beneficiary to the Guaranty, she nonetheless would not be compelled to arbitrate. (See *City of Peru v. Illinois Power* (1994), 258 Ill. App. 3d 309, 630 N.E.2d 454.) Thus, we hold that Mrs. Green cannot be compelled to arbitrate.

As an additional matter, we note that even though Mrs. Green cannot be compelled to arbitrate, we find that in the interest of judicial economy the proceedings should be stayed in the trial court while Mr. Green's claim is in arbitration.

Lastly, the Bank contends that the trial court erred in its decision which found that venue was proper in Will County. The Bank argues that the case should be remanded to allow the trial judge to reconsider his ruling.

■ The Bank's argument must be rejected. An appeal under Supreme Court Rule 307 does not open the door to a general review of all orders entered by the trial court up to the date of the order

that is appealed. (*Panduit Corp. v. All States Plastics Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316; *Murges v. Bowman* (1993), 254 Ill. App. 3d 1071, 627 N.E.2d 330.) Although the Bank has couched the issue in terms of allowing the judge to "reconsider" his ruling, we find that the Bank's issue is nothing more than an improper attempt to raise an issue which the trial court refused to certify under Supreme Court Rule 308 and which is not otherwise appealable.

For the foregoing reasons, we reverse the judgment of the circuit court of Will County and remand the cause to compel arbitration of Mr. Green's claims and to stay the trial court proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.