NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231069-U

NOS. 4-23-1069, 4-23-1197 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DON J. RHEINHART, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Knox County |
| TIMOTHY ROY LOVING; LOVING CAPITAL | ) | No. 23LA6 |
| MANAGEMENT, LLC d/b/a Preservation Wealth | ) | |
| Management, LLC and/or Preservation Financial | ) | |
| Management, LLC; KURE ADVISORY, LLC; and | ) | |
| TRUADVICE, LLC, | ) | |
|     Defendants | ) | |
| | ) | |
| (Timothy Roy Loving; Loving Capital Management, | ) | |
| LLC d/b/a Preservation Wealth Management, LLC and/or | ) | Honorable |
| Preservation Financial Management, LLC; and | ) | William A. Rasmussen, |
| TruAdvice, LLC, Defendants-Appellants). | ) | Judge Presiding. |

---

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed an order denying defendants' motions to compel arbitration where plaintiff's claims fell within the scope of an agreement's arbitration provisions.

¶ 2    Plaintiff, Don J. Rheinhart, filed this action alleging negligence and breach of fiduciary duties against defendants, Timothy Roy Loving and the various entities associated with him, including Loving Capital Management, LLC (LCM), Kure Advisory, LLC (Kure), and TruAdvice, LLC (TruAdvice). Plaintiff voluntarily dismissed Kure from the action. Defendants Loving, LCM, and TruAdvice moved to compel arbitration of plaintiff's claims. The trial court

declined to compel arbitration. Loving, LCM, and TruAdvice appeal. For the following reasons, we reverse and remand with directions to stay this action and compel arbitration.

¶ 3                                         I. BACKGROUND

¶ 4          In March 2023, plaintiff filed a complaint alleging as follows. He had an Individual Retirement Account (IRA) with T. Rowe Price. At some point, he hired Loving, an investment adviser, to help manage this IRA. In early March 2020, the value of plaintiff's IRA began to drop sharply due to a market downturn. Plaintiff and Loving discussed promptly moving plaintiff's assets into a stable account to protect them from further market fluctuations. Loving also advised plaintiff to roll his assets into an account with TD Ameritrade. On March 6, 2020, Loving directed his assistant to call T. Rowe Price with plaintiff to execute this transfer of assets. During that call, the assistant did not request for plaintiff's assets to be liquidated pending the transfer. The assets were ultimately transferred to a TD Ameritrade account in two transactions, on March 24 and March 30, 2020. During the time it took to complete the transfer, the value of plaintiff's investments decreased significantly. On July 14, 2020, plaintiff, Loving, and Loving's assistant called T. Rowe Price. During that call, Loving questioned why T. Rowe Price had not liquidated or sold plaintiff's assets on March 6, 2020. A representative of T. Rowe Price responded that T. Rowe Price had not received a sale or liquidation order. Plaintiff sought to recover his losses from Loving and the entities that employed him under theories of negligence and breach of fiduciary duties.

¶ 5          There is no dispute that on March 31, 2020, plaintiff signed a document titled "TruAdvice, LLC Investment Management Agreement" (agreement). Loving also signed the agreement in his capacity as "Investment Adviser Representative." Plaintiff was designated as the "Client" in the agreement, and TruAdvice was the "Adviser." Section 17 of the agreement

contained provisions regarding binding arbitration. The first sentence of this section provided that "Client agrees with Adviser to resolve any and all disagreements by final and binding arbitration." The agreement then listed "Important Disclosures" about the nature of binding arbitration, including that the parties were "*each waiving [their] respective rights to seek remedies in court, including the right to a jury trial.*" (Emphasis in original.) The agreement continued that, except as it would be void under "*applicable law*" (emphasis in original):

> "Client agree [*sic*] with Adviser that \*\*\* *ALL CLAIMS OR CONTROVERSIES, AND ANY RELATED ISSUES*, which may arise at any time between Adviser (including Adviser's representatives, members, managers, officers, employees, and agents) concerning any investment advice, recommendation, or exercise of limited discretionary authority with respect to any subject matter; any transaction or order; the conduct of our representatives, members, managers, officers, employees, and agents; the construction, performance, or breach of this or any other agreement between you and us, whether entered into prior to, on, or subsequent to the date of this Agreement; the breach of any common law or statutory duty; or the violation of any federal or state law of any nature *SHALL BE RESOLVED BY BINDING ARBITRATION RATHER THAN BY A LAWSUIT IN A COURT OF LAW OR EQUITY.*" (Emphases in original.)

The agreement further indicated that "[a]ny arbitration pursuant to this Agreement shall be conducted in accordance with, and governed by, a mutually agreeable arbitration forum, but, in the absence of such agreement, then the American Arbitration Association and its Code of Arbitration Procedure." The agreement specified it would be "governed by and construed in accordance with the laws of the State of Florida without regard for conflict of laws principles."

¶ 6    Invoking section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)), Loving and LCM moved to compel arbitration and dismiss the complaint, or alternatively, to stay the claims pending arbitration. Loving and LCM indicated that their motion was made pursuant to both the United States Arbitration Act, as amended, most commonly referred to as the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)), and Illinois's Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2022)). Loving and LCM contended that plaintiff's claims fell within the scope of the agreement's arbitration provisions. TruAdvice filed a separate motion arguing that the trial court should stay the proceedings pending arbitration. As an alternative to arbitration, TruAdvice also sought to dismiss the action against it pursuant to section 2-619 of the Code based on the alleged lack of substantive merit of plaintiff's claims. Specifically, TruAdvice contended it owed no fiduciary duty to plaintiff before the agreement was executed on March 31, 2020, and that plaintiff's negligence claims were barred by the economic loss doctrine. Loving and LCM later sought to dismiss the complaint based on similar substantive issues to those raised by TruAdvice.

¶ 7    Plaintiff responded that Loving and LCM were not parties to the agreement, so they lacked standing to enforce arbitration. Plaintiff also argued that the agreement's arbitration provisions did not apply to his claims, which arose before the agreement was executed. On that point, plaintiff focused on the language in the arbitration provisions requiring arbitration of claims, controversies, and related issues "which may arise." Plaintiff submitted that this quoted language was "plainly forward-looking, applying to claims or controversies that 'may arise' subsequent to the execution of the Agreement." Addressing other language in the agreement requiring arbitration of claims, controversies, and related issues concerning "the construction, performance, or breach of this or any other agreement between you and us, whether entered into prior to, on, or subsequent

to the date of this Agreement," plaintiff maintained that (1) defendants did not contend that plaintiff had any prior agreements with them and (2) plaintiff was not alleging a breach of the March 31, 2020, agreement. Additionally, plaintiff opposed the arguments directed to the substantive merits of his claims.

¶ 8            On September 20, 2023, the trial court held a nonevidentiary hearing on the motions filed by Loving, LCM, and TruAdvice. At this hearing, plaintiff's counsel conceded that Loving had standing as a third-party beneficiary to rely on the arbitration provisions of the agreement. The court declined to compel arbitration. Reasoning that the agreement was ambiguous as to whether its arbitration provisions applied to events that occurred before the parties executed the agreement, the court construed the ambiguity against the drafter (TruAdvice). The court then addressed Loving's, LCM's and TruAdvice's arguments regarding the substantive merits of plaintiff's claims. The court denied all pending motions. On September 28, 2023, the court signed a written order documenting its rulings.

¶ 9            On October 16, 2023, Loving and LCM filed a notice of appeal from the portion of the September 28, 2023, order denying their motion to compel arbitration. That appeal was docketed in this court as No. 4-23-1069. On October 30, 2023, TruAdvice filed a notice of appeal from the portion of the September 28, 2023, order denying the motion to compel arbitration. (Thirty days following September 28 was Saturday, October 28; October 30 was the following Monday. Thus, TruAdvice's notice of appeal was timely.) That appeal was docketed in this court as No. 4-23-1197. We granted appellants' unopposed request to consolidate the appeals.

¶ 10                                II. ANALYSIS

¶ 11           On appeal, Loving and LCM argue that the trial court erred by declining to compel arbitration. TruAdvice raises similar arguments but also challenges the court's rulings regarding

the substantive merits of plaintiff's claims. Specifically, TruAdvice contends that the court should have dismissed plaintiff's claims because (1) TruAdvice did not owe plaintiff a fiduciary duty prior to March 31, 2020 and (2) plaintiff's negligence claims are barred by the economic loss doctrine. Plaintiff responds that the court properly declined to compel arbitration. According to plaintiff, we lack jurisdiction to entertain TruAdvice's arguments directed to the merits of his claims.

¶ 12    " 'A motion to compel arbitration is essentially a section 2-619(a)(9) motion to dismiss or stay an action in the trial court based on an affirmative matter, the exclusive remedy of arbitration.' " *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 28 (quoting *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21). In ruling on such a motion, "the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Nord*, 2023 IL App (4th) 220669, ¶ 28. Where, as here, the court denies a motion to compel arbitration without holding an evidentiary hearing, we review the order *de novo*. *Nord*, 2023 IL App (4th) 220669, ¶ 29.

¶ 13                                A. Jurisdiction

¶ 14    We first address our jurisdiction. Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) allows for interlocutory appeals from orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." An order denying a motion to compel arbitration is injunctive in nature and is appealable pursuant to Rule 307(a)(1). *Nord*, 2023 IL App (4th) 220669, ¶ 23. Thus, we have jurisdiction to review the portion of the trial court's September 28, 2023, order declining to compel arbitration of plaintiff's claims.

¶ 15    However, we lack jurisdiction to address TruAdvice's challenges to the portion of the September 28, 2023, order declining to dismiss the case based on the purported lack of merit of plaintiff's claims. The substantive merit of plaintiff's claims has nothing to do with whether the

claims are subject to arbitration. See *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *Green v. Bank One La Grange*, 266 Ill. App. 3d 344, 348 (1994) ("The question of whether an arbitration agreement encompasses a particular issue is to be determined without regard to the merits."). Moreover, an order denying a motion to dismiss directed toward the merits of a claim is not an injunctive ruling within the meaning of Rule 307(a)(1). See *Mund v. Brown*, 393 Ill. App. 3d 994, 997 (2009) (explaining that the denial of a motion to dismiss the case pursuant to the Citizen Participation Act was not an injunctive ruling that was appealable under Rule 307(a)(1)). Even where the appellate court has jurisdiction over one issue in an appeal pursuant to Rule 307(a)(1), this "does not open the door to a general review of all orders entered up to the date of the interlocutory order that is appealed." *Rathje v. Horlbeck Capital Management, LLC*, 2014 IL App (2d) 140682, ¶ 37.

¶ 16        In its reply brief, TruAdvice cites *People v. Johnson*, 208 Ill. 2d 118 (2003), in support of its request for us to review its arguments directed toward the merits of plaintiff's claims. In *Johnson*, a criminal case, the trial court suppressed certain statements the defendant made to the police on the basis that the defendant had not validly waived her right to counsel. *Johnson*, 208 Ill. 2d at 124. On the State's interlocutory appeal, the appellate court first affirmed the suppression order on a different basis, holding that the defendant had been arrested without probable cause. *Johnson*, 208 Ill. 2d at 125. However, in addition to affirming the judgment, the appellate court held that the lack of probable cause for the arrest required suppression of additional statements that the trial court had not ordered suppressed. *Johnson*, 208 Ill. 2d at 126. Our supreme court subsequently held that it was proper for the appellate court to affirm the suppression order on

alternate grounds included in the record. *Johnson*, 208 Ill. 2d at 138. However, the supreme court held that the appellate court exceeded its jurisdiction by ordering additional statements to be suppressed. *Johnson*, 208 Ill. 2d at 139.

¶ 17　　　　　Unlike the defendant in *Johnson*, TruAdvice is an appellant in a Rule 307(a)(1) civil appeal seeking to reverse the judgment, not an appellee defending the judgment. Therefore, the maxim that a reviewing court may affirm on any basis in the record does not support TruAdvice's request for us to address its arguments directed to the merits of plaintiff's claims. We determine that our jurisdiction under Rule 307(a)(1) is limited to considering whether the trial court properly declined to compel arbitration of plaintiff's claims.

¶ 18　　　　　　　　B. Preliminary Issues Regarding the Applicable Law

¶ 19　　　　　The agreement specified it was to be construed according to Florida law. Rather than relying on Florida cases and statutes, the parties have litigated the issue of arbitrability by citing cases applying either the Federal Arbitration Act or Illinois's Uniform Arbitration Act. The Federal Arbitration Act applies only where the parties' contract evidences "a transaction involving commerce." 9 U.S.C. § 2 (2018); *Key v. Accolade Healthcare of the Heartland, LLC*, 2024 IL App (4th) 221030, ¶ 27. However, the parties have never specifically addressed the issue of whether the agreement evidenced a transaction involving commerce. The parties also have not explained why Illinois's Uniform Arbitration Act would apply where the agreement specifically contemplated applying Florida law. Nevertheless, as we will explain, plaintiff's claims are subject to arbitration regardless of whether we look to case law interpreting the Federal Arbitration Act or Illinois's Uniform Arbitration Act.

¶ 20　　　　　　　　C. Who Decides the "Gateway" Issue of Arbitrability?

¶ 21    Loving and LCM contend that the trial court erroneously addressed whether plaintiff's claims were arbitrable, as this was a "gateway" issue for the arbitrator to decide. Loving and LCM may not raise this issue on appeal, as they invited any error by urging the court to find that the claims fell within the scope of the arbitration agreement. See *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) ("A party cannot complain of error which he induced the court to make or to which he consented.").

¶ 22    Aside from the fact that Loving's and LCM's position on this point is inconsistent with their position below, the circumstances here did not require an arbitrator to decide the issue of arbitrability. Under case law construing the Federal Arbitration Act, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies*, 475 U.S. at 649. Here, the agreement did not clearly and unmistakably delegate the issue of arbitrability to an arbitrator. Loving and LCM note that the agreement referenced the American Arbitration Association and its Code of Arbitration Procedure. However, the agreement did not say that arbitration would be governed by any particular set of rules. Instead, the agreement said, "Any arbitration pursuant to this Agreement shall be conducted in accordance with, and governed by, *a mutually agreeable arbitration forum*, *but, in the absence of such agreement*, then the American Arbitration Association and its Code of Arbitration Procedure." (Emphasis added.) This language is distinguishable from the arbitration provisions in *Mikoff v. Unlimited Development, Inc.*, 2024 IL App (4th) 230513, ¶ 52, for example, which said that "the arbitration 'shall be conducted in accordance with the rules of the American Arbitration Association.' " Thus, the agreement here did not meet the specificity requirement of *AT&T Technologies* to change the default rule under the Federal Arbitration Act that the court should determine the issue of arbitrability.

¶ 23 Under case law applying Illinois's Uniform Arbitration Act, a court should decide the issue of arbitrability if that issue is "apparent" from the agreement's "clear" language. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445 (1988). But "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Donaldson*, 124 Ill. 2d at 447-48. Here, no party ever disputed the trial court's authority to decide the issue of arbitrability. Additionally, as explained in the next section, no party argues on appeal that the arbitration provisions are ambiguous, and we hold that these provisions plainly require arbitration of plaintiff's claims. Thus, the court did not violate *Donaldson*'s rule by deciding the issue of arbitrability.

¶ 24 D. The Language of the Agreement

¶ 25 We now look to the language of the agreement to ascertain whether plaintiff's claims are subject to arbitration. Loving, LCM, and TruAdvice argue that the agreement's broad arbitration provisions unambiguously encompass plaintiff's claims. Loving and LCM further insist that any ambiguity must be interpreted in favor of arbitration. Plaintiff argues that the agreement is unambiguous, but he proposes it "does not apply retroactively" to claims arising before the agreement was executed on March 31, 2020.

¶ 26 "While public policy favors arbitration as a method of dispute resolution, an agreement to arbitrate is nevertheless a matter of contract." *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 29. " 'The parties to an agreement are bound to arbitrate only those issues which by clear language and their intentions expressed in the language show they have agreed to arbitrate.' " *Clanton*, 2023 IL 129067, ¶ 29 (quoting *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 387 (1991)); see *Volt Information Sciences, Inc. v. Board of Trustees of Leland*

*Stanford Junior University*, 489 U.S. 468, 478 (1989) (recognizing that the Federal Arbitration Act "does not require parties to arbitrate when they have not agreed to do so," but "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms"). We rely on ordinary principles of contract interpretation, and our "primary objective is to determine and give effect to the intent of the parties at the time they entered into the contract." *Clanton*, 2023 IL 129067, ¶ 30. To ascertain the parties' intent, we first look to the language of the contract, considering the contract as a whole rather than isolating any provision. *Clanton*, 2023 IL 129067, ¶ 30. If the contract is unambiguous, we ascertain the parties' intent from the language of the contract itself, not by the parties' construction of that language during litigation. *Clanton*, 2023 IL 129067, ¶ 30.

¶ 27    Again, the first sentence of the section of the agreement addressing arbitration provided that "Client agrees with Adviser to resolve any and all disagreements by final and binding arbitration." The agreement then listed "Important Disclosures" about the nature of binding arbitration, including that the parties were "*each waiving [their] respective rights to seek remedies in court, including the right to a jury trial.*" (Emphasis in original.) The agreement continued that, except as it would be void under "*applicable law*" (emphasis in original):

> "Client agree [*sic*] with Adviser that \*\*\* *ALL CLAIMS OR CONTROVERSIES, AND ANY RELATED ISSUES,* which may arise at any time between Adviser (including Adviser's representatives, members, managers, officers, employees, and agents) concerning any investment advice, recommendation, or exercise of limited discretionary authority with respect to any subject matter; any transaction or order; the conduct of our representatives, members, managers, officers, employees, and agents; the construction, performance, or breach of this or any other agreement

between you and us, whether entered into prior to, on, or subsequent to the date of this Agreement; the breach of any common law or statutory duty; or the violation of any federal or state law of any nature *SHALL BE RESOLVED BY BINDING ARBITRATION RATHER THAN BY A LAWSUIT IN A COURT OF LAW OR EQUITY.*" (Emphases in original.)

¶ 28 In arguing that his claims of negligence and breach of fiduciary duties fall outside the scope of the agreement's very broad arbitration provisions, plaintiff focuses on the words "which may arise" in insolation. According to plaintiff, these words indicate the arbitration language is "forward looking and does not apply to past conduct." From this premise, plaintiff reasons that because the agreement was executed on March 31, 2020, his claims, which involved conduct that occurred prior to that date, are not subject to arbitration.

¶ 29 Although the trial court did not specifically endorse plaintiff's interpretation, the court deemed the agreement ambiguous as to its scope, and the court construed that ambiguity against the drafter. On appeal, no party argues the arbitration provisions are ambiguous.

¶ 30 Plaintiff's analysis of the agreement's arbitration provisions is flawed, as he isolates words and strips them of their context. The portion of the sentence from which plaintiff quotes actually required arbitration of "all claims or controversies, and any related issues, [(emphasis removed)] which may arise *at any time*." (Emphasis added.) Notably, this language covers not just claims or controversies that may arise at any time, but any issues related to those claims or controversies that may arise at any time. Such broad language comfortably encompasses the claims in this lawsuit, which was filed long after the arbitration agreement was executed, even though the claims were primarily based on conduct predating the execution of the agreement. We say

"primarily" because the complaint also included allegations about a phone conversation on July 14, 2020, between plaintiff, Loving, Loving's assistant, and a representative of T. Rowe Price.

¶ 31 The remainder of the arbitration provisions further undermine plaintiff's position that arbitration is limited to claims arising after March 31, 2020. The agreement specified that all claims, controversies, and any related issues regarding the performance or "breach of this or any other agreement" between the parties, "*whether entered into prior to, on, or subsequent to the date of this Agreement*," were subject to arbitration. (Emphasis added.) Although plaintiff's complaint alleged breach of fiduciary duties and negligence, not breach of contract, this language is inconsistent with plaintiff's position that the arbitration provisions are forward-looking only. Moreover, plaintiff's interpretation ignores and renders superfluous the first sentence in the section of the agreement addressing arbitration, which provided that "Client agrees with Adviser to resolve *any and all disagreements* by final and binding arbitration." (Emphasis added.) Construing the agreement as a whole rather than looking to certain words in isolation, we discern no ambiguity. Plaintiff's claims of negligence and breach of fiduciary duties fall within the scope of the plain language of the agreement's arbitration provisions.

¶ 32 Plaintiff proposes that three cases support his interpretation of the arbitration provisions: *Carr v. United States*, 560 U.S. 438 (2010), *Winston Labs v. Sebelius*, 2009 WL 8631071 (N.D. Ill. 2009), and *Salsitz v. Kreiss*, 198 Ill. 2d 1 (2001). *Carr* and *Winston Labs* both addressed disputes regarding the temporal scope of federal statutes that contained present-tense language. See *Carr*, 560 U.S. at 442, 449-50 (holding that a statute using the phrase "travels in interstate or foreign commerce" did not apply to someone who traveled before the statute was enacted); *Winston Labs*, 2009 WL 8631071 at * 5 (holding that where a statute defined the word "affiliate" using present-tense language, a long-since-dissolved company did not constitute a

party's affiliate). Unlike the statutes at issue in those cases, the arbitration provisions here contained much broader language that was not limited to the present tense. In *Salsitz*, our supreme court held that the claims at issue arose pursuant to an agreement that did not contain an arbitration clause, so an arbitration clause in a different agreement did not apply. *Salsitz*, 198 Ill. 2d at 16. Here, by contrast, the only written agreement in the record contains arbitration provisions that are most naturally interpreted as encompassing a subsequently-filed lawsuit alleging negligence and breach of fiduciary duties. Moreover, plaintiff's claims are based on his client-investment adviser relationship with Loving before the parties executed a written agreement and that written agreement expressly requires arbitration of claims regarding the performance of preexisting agreements.

¶ 33        Plaintiff cites an additional unpublished Illinois Appellate Court order predating 2021. See *Bastanipour v. Warner*, 2012 IL App (1st) 120730-U. We will not address that case, as plaintiff does not cite it for any permissible purpose. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (providing that parties may cite unpublished orders predating 2021 only to "support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case").

¶ 34        Accordingly, we hold that plaintiff's claims are subject to arbitration. We reverse the portion of the trial court's September 28, 2023, order denying defendants' motions to compel arbitration. We remand the cause to the trial court with directions to stay this action and compel arbitration.

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons stated, we reverse the trial court's judgment and remand with directions to stay this action and compel arbitration.

¶ 37        Reversed and remanded with directions.